KRG New Hill Place, LLC v. Springs Investors, LLC, 2015 NCBC 19.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 14770

| | | |
|---|---|---|
| KRG NEW HILL PLACE, LLC and KITE REALTY NEW HILL PLACE, LLC, Plaintiffs | ) ) ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| SPRINGS INVESTORS, LLC; B. KYLE WARD; MICHAEL L. HUNTER and STEPHEN C. WARD, Defendants | ) ) ) ) ) | |

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiffs' Motion to Amend Complaint (the "Plaintiffs' Complaint Motion"), Plaintiffs' Motion to Dismiss Count IV of Defendants' Amended Counterclaims (the "Plaintiffs' Motion to Dismiss"), and Defendants' Motion to Dismiss (the Defendants' Motion to Dismiss"). On February 18, 2015, the Court held a hearing on these motions.

THE COURT, after considering the motions, briefs in support of and in opposition to the motions, arguments of counsel and other appropriate matters of record, CONCLUDES that the motions should be GRANTED in part and DENIED in part, for the reasons stated herein.

*Smith Moore Leatherwood LLP by Bradley M. Risinger, Esq. and Barnes & Thornburg LLP by Robert D. MacGill, Esq., Karoline E. Jackson, Esq., and Alexander P. Orlowski, Esq. for Plaintiffs.*

*Shanahan Law Group, PLLC by Kiernan J. Shanahan, Esq., John E. Branch III, Esq., Brandon S. Neuman, Esq., Christopher Battles, Esq., and Jeffrey M. Kelly, Esq. for Defendants.*

McGuire, Judge.

PROCEDURAL HISTORY

1.     On November 5, 2013, Plaintiffs KRG New Hill Place, LLC and Kite Realty New Hill Place, LLC ("Plaintiffs") initiated this action by filing their Complaint.  Plaintiffs' action was designated as No. 13 CVS 14770 by the Clerk of Superior Court of Wake County.

2.     In their Complaint, Plaintiffs pursue the following claims for relief ("Claim(s)"): Count I – Breach of Contract; Count II – Breach of Implied Covenant of Good Faith and Fair Dealing; Count III – Declaratory Judgment; Count IV – Claim for Fraudulent Transfer Pursuant to N.C. Gen. Stat. § 39-23 *et seq.*; Count V –  Unfair and Deceptive Trade Practices; and Count VI – Individual Liability Under N.C. Gen. Stat. §§ 57C-3-30 and 57C-3-32 (as against the Individual Defendants).

3.     On December 23, 2013, Defendants Springs Investors, LLC ("Springs Investors"), B. Kyle Ward, Michael L. Hunter, and Stephen C. Ward (collectively, "Individual Defendants") filed an Answer to Plaintiffs' Complaint, and a Counterclaim on behalf of Springs Investors.

4.     On October 30, 2014, this Court granted Defendants' Motion to Amend Answer and Counterclaims, and on November 6, 2014, Defendants filed their Verified Amended Answer and Counterclaims. The Amended Counterclaim alleges four causes of action ("Counterclaim(s)"): First Cause of Action: Breach of the Development Agreement; Second Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing; Third Cause of

Action: Declaratory Judgment; and Fourth Cause of Action: Tortious Interference with Prospective Economic Advantage.

5. On December 3, 2014, Plaintiffs filed Plaintiffs' Motion to Dismiss, seeking dismissal of Defendants' Counterclaim for Tortious Interference with Prospective Economic Advantage pursuant to Rule 12(b)(6). Plaintiffs contend that Defendants have not successfully alleged that Plaintiffs induced a third party not to enter into a contract with Individual Defendants, that Plaintiffs acted without justification, or that Individual Defendants would have entered into the third party contract but for Plaintiffs' actions.

6. On December 15, 2014, Plaintiffs filed the Plaintiffs' Complaint Motion. The Plaintiffs' Complaint Motion seeks leave of the Court to make several amendments to the Complaint that primarily fall into two categories: (1) amendments to allegations that Plaintiffs ceased work under the disputed contract, to allege instead that the work was "impeded" due to permitting issues; and (2) amendments to add additional allegations in support of Plaintiffs' claim for fraudulent transfer.

7. On December 22, 2014, Defendants filed a Motion to Dismiss Count IV of Plaintiffs' Claims pursuant to Rule 12(b)(1), on the basis that Plaintiff's Claim for fraudulent transfer is moot and the complained-of transfer did not result in any harm to Plaintiffs.

8. On February 18, 2015, the Court held a hearing on the motions. The motions have been fully briefed and argued and are ripe for determination.

FACTUAL BACKGROUND

Among other things, the parties allege that:[1]

9.      Plaintiffs are limited liability companies that own a 123 acre parcel of real property in Holly Springs, North Carolina, that Plaintiffs are developing into a shopping center, among other things.

10.      Springs Investors is a limited liability company that owns a 21 acre parcel of property (the "Springs Property") that is adjacent to Plaintiffs' real property in Holly Springs. The Individual Defendants are members of Springs Investors. On February 28, 2013, Springs Investors conveyed the Springs Property to the Individual Defendants. In January, 2014, the Individual Defendants transferred the property back to Springs Investors.

11.      On July 15, 2008, Plaintiffs and Springs Investors entered into a Post Closing Development Agreement (the "Development Agreement") to coordinate the development of their adjacent properties and share the cost of infrastructure work, including improvements to existing roadways and the construction of an internal thoroughfare, necessary to the development of the parties' respective properties (the "Infrastructure Work").

12.      Plaintiffs spearheaded contracting for the two phases of the Infrastructure Work: Phase I focused on improvements to existing roadways, and Phase II was the construction of the internal thoroughfare. Pursuant to the Development Agreement, Plaintiffs were to "endeavor to cause each contract entered into for the performance of the Infrastructure Work to require substantial completion of the work thereunder to be completed such that the entire Infrastructure Work shall be completed by December 31, 2010."[2]

---

[1] Additional allegations relevant to the motions to dismiss are discussed below.
[2] Compl. & Proposed Am. Compl. ¶14; Ex. 1 to Compl. & Proposed Am. Compl. (the "Development Agreement") at § 2.

13.    Due to the economic downturn that occurred after execution of the Development Agreement, the Infrastructure Work was put on hold until early 2012, when the real estate markets showed some improvement.  Phase I was substantially completed on or around March 1, 2013. Phase II has not been completed because the parties dispute which one is responsible for the cost of completing the Infrastructure Work.

DISCUSSION

**Plaintiffs' Motion to Amend Complaint[3]**

14.    In their Motion to Amend Complaint, Plaintiffs seek to amend the allegations contained in numbered paragraphs in the original Complaint, and to add new numbered paragraphs alleging additional facts in support of their claim for fraudulent transfers.[4]  For the reasons stated herein, the Court concludes in its discretion that the Plaintiffs' Motion to Amend is GRANTED in part and DENIED in part.

15.    In the original Complaint, Plaintiffs allege that Defendants fraudulently transferred the Springs Property from Springs Investors to the Individual Defendants. Plaintiffs now move to add allegations that Defendants engaged in certain financial transactions that violated the Uniform Fraudulent Transfers Act ("UFTA") in addition to the transaction involving the Springs Property.[5]  Plaintiffs contend that they first learned of these transactions in December 2014, when Defendants produced financial records that

---

[3] At the hearing, Defendants' counsel asserted that Plaintiffs' proposed Amended Complaint removes all references to the specific amounts of money that Plaintiffs claim they are seeking and, accordingly, Plaintiffs have failed to allege that this Court has jurisdiction.  The Court notes that in paragraph 12 of the proposed Amended Complaint Plaintiffs allege that the Court has jurisdiction pursuant to G.S. §7A-243, but erroneously state that the amount in controversy "exceeds $10,000" rather than correct amount of $25,000.  In addition, from the record developed in this case it is clear that Plaintiff seeks a sum far greater than $25,000 as damages under their claims in this case.  Accordingly, the Court concludes that Plaintiff has adequately pleaded the jurisdiction of this Court.

[4] All references herein are to the paragraphs as numbered in the Proposed Amended Complaint filed by Plaintiffs with their Motion to Amend.

[5] Plaintiffs allege the transactions consisted primarily of notes receivable for loans Springs Investors made to "sister entities" which Springs Investors forgave and removed from as assets from its balance sheets.

Plaintiffs had requested through discovery in April 2014. Defendants contend that the proposed amendments are futile for reasons discussed below with regard to Defendants' motion to dismiss the UFTA claim.

16. Rule 15 of the North Carolina Rules of Civil Procedure ("Rule(s)") provides that "leave shall be freely given" to amend a pleading "when justice so requires." This has been interpreted to mean that an amendment should be "freely allowed unless some material prejudice to the other party is demonstrated." *Mauney v. Morris*, 316 N.C. 67, 72 (1986). A court may deny a motion to amend for, *inter alia*, undue delay, bad faith, undue prejudice, futility, and failure to cure through previous amendments. *See, e.g.*, *Martin v. Hare*, 78 N.C. App. 358, 361 (1985). Ultimately, whether to allow an amendment rests in the trial judge's discretion. *House of Raeford Farms, Inc. v. Raeford*, 104 N.C. App. 280, 282 (1991).

17. There is no dispute that Plaintiffs did not receive the records that revealed the transactions upon which they base their amended allegations of violations of the UFTA until December 2014. The records consisted of documents Plaintiffs had first requested from Defendants in April 2014. Defendants objected to producing the records, but ultimately agreed to produce them in December. Under the circumstances, the Court concludes in its discretion that Plaintiffs did not unduly delay in seeking these amendments and that justice requires that Plaintiffs be permitted to amend their Complaint to add the allegations regarding these transactions. As to these allegations, the Plaintiffs' Complaint Motion should be GRANTED.

18. Plaintiffs have also moved to amend their allegations in paragraphs 26 and 27 of the original Complaint regarding the reason that the Infrastructure Work under the Development Agreement was put on hold. In the original Complaint, Plaintiffs alleged that Plaintiffs and Springs Investors put the project on hold because of the "economic downturn", and renewed work on the project in early 2012. Plaintiffs seek to amend paragraph 26 to

allege that the Infrastructure Work was merely "impeded" and not put on hold.[6] Plaintiffs seek to amend paragraph 27 to allege that "construction on the roadway improvement project could not begin until [the parties] secured all necessary permitting" and that Springs Investors was not able to obtain one of the necessary permits until December 6, 2010.[7] Plaintiffs contend that this new explanation for why the Infrastructure Work was put on hold only came to light when Plaintiffs' own Rule 30(b)(6) witness testified in a deposition conducted by Defendants on November 17, 2014. Plaintiffs offer no explanation as to why this information, provided by their own witness, would not have been available to them at the time that they commenced this lawsuit. Defendants argue that the requested amendment is an eleventh hour attempt by Plaintiffs to change their position on why the Infrastructure Work was not completed by December 31, 2010, that Plaintiffs "unduly delayed" in seeking the amendment, and that the amendment would be prejudicial to Defendants.[8]

19. The Court agrees that Plaintiffs unduly delayed in seeking the amendments to paragraphs 26 and 27. See *Draughton v. Harnett Cnty. Sch. Bd.*, 166 N.C. App. 464, 467-68 (2004) (denying the plaintiff's motion to amend for undue delay when the motion was filed over four years after the event giving rise to the lawsuit, and over two years after the original complaint was filed); *Williams v. Craft Dev., LLC*, 199 N.C. App. 500, 509-10 (2009) (denying a motion to amend when the plaintiff made her motion over a year after she filed the original complaint, and was based upon deposition testimony elicited two months prior to motion). In this case, the Infrastructure Work was put on hold in late 2008 or early 2009. Plaintiffs did not seek amendment of the Complaint to more accurately reflect what they now claim were

---

[6] Proposed Amend. Compl. ¶ 26.
[7] *Id.* ¶ 27.
[8] Defs.' Resp. to Pls.' Motion to Amend 3.

the reasons they ceased work until over five years later, and more than one year after they filed the original Complaint. The Court, in its discretion, concludes that the proposed amendments to paragraphs 26 and 27 should be DENIED.

### Plaintiffs' Motion to Dismiss Defendant's Counterclaim for Intentional Interference with Prospective Economic Advantage

20. Plaintiffs move the Court pursuant to Rule 12(b)(6) to dismiss Defendants' Counterclaim for tortious interference with prospective economic advantage. The Counterclaim[9] arises from the Individual Defendants' thwarted joint venture with a third party, Kaplan Communities ("Kaplan"), to develop the Springs Property for a residential apartment complex ("the Joint Venture"). Defendants allege that Plaintiffs' failure to complete the Infrastructure Work under the Development Agreement caused Kaplan to back out of the Joint Venture. Plaintiffs' contend that Defendants' claim for tortious interference should be dismissed because it fails to allege facts sufficient to show that Plaintiffs induced Kaplan not to enter into the Joint Venture, that Plaintiffs were without justification in failing to complete the Infrastructure Work, or that Kaplan would have completed the Joint Venture with Defendants "but for" Plaintiffs' failure to complete the Infrastructure Work.[10]

21. In deciding a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, the court treats the well-pleaded allegations in the counterclaims as true and admitted. However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). The court views the allegations in the light most favorable to the non-movant. *See Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). A claim should not be dismissed under Rule 12(b)(6) unless it "affirmatively appears that [claimant] is entitled to no relief under any state of facts which could be presented in support of the

---

[9] Defs.' Am. Answer and Counterclaims ¶¶112-124.
[10] Pls.' Mot. Dismiss 1.

claim." *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481 (1985) (quoting *Presnell v. Pell*, 298 N.C. 715, 719 (1979)).

22. In their Counterclaim, Defendants allege that from October 2012 through February 2013, Defendants negotiated the terms of the Joint Venture with Kaplan.[11] Plaintiffs had knowledge of the Joint Venture and the crucial relationship between the completion of the Infrastructure Work and the development of the Springs Property in the Joint Venture.[12] Plaintiffs were contractually obligated by the Development Agreement to complete the Infrastructure Work by December 10, 2010, but failed to do so in breach of the Development Agreement.[13]

23. Defendants allege that Plaintiffs' failure to complete the Infrastructure Work in breach of the Development Agreement "caused the Individual Defendants and Kaplan to refrain from" formally entering into the Joint Venture.[14] Defendants have not alleged that Plaintiffs had any contact with or directed any actions towards Kaplan. Defendants further allege that the failure of the Joint Venture caused damages to Defendant.[15]

24. "To establish tortious interference with prospective economic advantage, a plaintiff must show that the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff, which would have been made absent the defendant's interference." *Alcorn v. Bland*, 2012 N.C. App. LEXIS 1416 at *21-22 (2012) (quoting *MLC Auto., LLC v. Town of S. Pines*, 207 N.C. App. 555, 571 (2010)); *Daimlerchrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585 (2002) (stating that a claim for tortious interference with prospective economic advantage must show that the adverse party

---

[11] Defs.' Am. Counterclaims ¶¶ 26-27.
[12] *Id.* ¶¶ 35-36.
[13] *Id.* ¶¶ 14(f), 21, 23, 24, 46 and 47.
[14] *Id.* ¶ 39.
[15] *Id.* ¶¶ 40-44.

"induced a third party to refrain from entering into a contract with [claimant] without justification . . . [and] that the contract would have ensued but for [the] interference.").

25.    Defendants contend that they have adequately pleaded the inducement element of a claim for tortious interference with prospective economic advantage by alleging that Plaintiffs' breach of the Development Agreement caused Kaplan not to enter into the Joint Venture.  Defendants argue that they are merely required to allege that that Plaintiffs' conduct *caused* Kaplan not to enter into the Joint Venture, and not that Plaintiffs affirmatively directed any conduct towards Kaplan.[16]  Plaintiffs contend that Defendants are required to "allege that [Plaintiffs] *acted* with the purpose of *inducing* Kaplan to refrain from" entering into the Joint Venture.[17]

26.    The Court concludes that the inducement required to establish a claim for intentional interference with prospective economic advantage requires purposeful conduct intended to influence a third party not to enter into a contract with the claimant.  The North Carolina Court of Appeals has held:

> The relevant definition of "induce" is (1) "to move by persuasion or influence[;]"
> (2) "to call forth or bring about by influence or stimulation[;]" and (3) "to cause
> the formation of[.]" Similarly, Black's Law Dictionary defines inducement as
> "[t]he act or process of enticing or persuading another person to take a certain
> course of action."  We note that all of the above-cited definitions of . . . "induce"
> are similar in that they involve active persuasion, request, or petition.

*Inland Am. Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 354 (2011) (citing Merriam-Webster's Collegiate Dictionary 637 (11th ed. 2005) and Black's Law Dictionary 845 (8th ed. 2009)).[18]

---

[16] Defs.' Opp. Mot. Dismiss Count IV of Defs.' Am. Countercl. 5-9, 5 n.1.
[17] Pls.' Reply Supp. Mot. Dismiss Count IV of Defs.' Am. Countercl. 2.
[18] The Court of Appeals decision in *Alcorn v. Bland, supra*, supports the notion that inducement must have some element of purposefulness to support a claim for intentional interference with prospective economic advantage.  In discussing the "without justification" element of the claim, the court held that a design to injure the plaintiff could be established by "force, threats, or intimidation" directed towards a third party to "sway" the third party not to contract with plaintiff, and that "there

27.     Although *Inland* involved interpretation of the word "induce" as used in a written employment agreement, there is nothing about the court's analysis of that word's meaning that makes it inapplicable to this case.

28.     Defendants' position that the word "induced" must be interpreted to simply to mean "caused" is untenable. To equate "induced" with "caused" would mean that any type of conduct by a party that caused a third party to refrain from entering into a contract with a claimant would be grounds for asserting the claim. This would have broad implications for contractual relations in this State as it would make every contracting party potentially liable for the types of damages available for intentional torts, including compensatory and punitive damages, whenever the failure to fulfill a contract for any reason caused the other party to the contract to lose a prospective business opportunity.

29.     Defendants have not alleged that Plaintiffs took any purposeful action that was intended to influence Kaplan not to enter into the Joint Venture.[19] To the contrary, Defendants have alleged only that Plaintiffs "had knowledge of" the Joint Venture and that the breach of the Development Agreement "caused the failure of the Joint Venture." Defendants have made no allegations of purposeful conduct by Plaintiffs directed towards Kaplan, let alone allegations that such conduct influenced Kaplan. In addition, Defendants allege the breach of the Development Agreement occurred on December 31, 2010, almost two years before Defendants began negotiations with Kaplan for the Joint Venture. Defendants do not allege that Plaintiffs knew of the Joint Venture before October 2012. The Plaintiffs

---

can be no actionable 'malicious and wanton interference' without this allegation." 2012 N.C. App. LEXIS at *21-22.
[19] Although Defendants use the word "induced" in their counterclaim, the surrounding factual allegations do not support that Plaintiffs induced Kaplan, and this Court is not bound by Plaintiff's conclusory allegation. *Laster v. Francis*, 199 N.C. App. 572, 577 (2009) (The Court is "not required . . . to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

could not have intended for their alleged breach of the Development Agreement on December 31, 2010, to influence Kaplan not to proceed with the Joint Venture when that breach occurred before negotiations with Kaplan even started. Accordingly, Plaintiffs' Motion to Dismiss should be GRANTED.

### Defendants' Motion to Dismiss Plaintiff's Claim for Fraudulent Transfer

30. Defendants have moved pursuant to Rule 12(b)(1) to dismiss Plaintiffs' Claim for violation of the North Carolina Fraudulent Transfers Act, G.S. § 39-23.1 et seq. ("UFTA"). Plaintiffs allege that Springs Investors fraudulently transferred the Springs Property to the Individual Defendants shortly after Plaintiffs notified Defendants that Springs Investors would be required to contribute additional funds under the Development Agreement.[20] Plaintiffs alleged that Springs Investors transferred the property without receiving equivalent value in return "with intent to hinder, delay or defraud creditors of Springs Investors."[21] Defendants contend that the UFTA claim is now moot, and the Court lacks subject matter jurisdiction, because the Individual Defendants have transferred the Springs Property back to Springs Investors. Defendants argue that this leaves Plaintiffs without a remedy under the UFTA. Defendants acknowledge that the Court's decision on Plaintiffs' Motion to Amend could impact their mootness argument, but rely upon their opposition to that Motion.[22]

31. The Court has granted Plaintiffs' Motion to Amend regarding the allegations that Springs Investors fraudulently transferred other assets in addition to the Springs Property. The amendment to the Complaint moots Defendants' motion to dismiss Plaintiffs' Claim under the UFTA. *Houston v. Tillman*, __ N.C. App. __, __, 760 S.E.2d 18, 20 (2014)

---

[20] Proposed Am. Compl. ¶¶ 102-03.
[21] *Id.* ¶¶ 103-04.
[22] Defs.' Mem. Supp. Mot. Dismiss 7 n.2

(citing *Ass'n for Home & Hospice Care of N.C., Inc. v. Div. of Med. Assistance*, 214 N.C. App. 522, 525 (2011); *Hyder v. Dergance*, 76 N.C. App. 317, 319-20 (1985); *Coastal Corp. v. Guardian Indus., Inc.*, 63 N.C. App. 176, 178 (1983)) (ruling that an amendment to a complaint containing allegations that defeat the motion to dismiss will render the motion moot). Defendants' Motion to Dismiss should be DENIED.

32. To the extent that Defendants' Motion to Dismiss could still be viewed as a request to dismiss Plaintiffs' allegation that Springs Investors fraudulently transferred the Springs Property separate and apart from any other assets, the Motion also should be denied. The transfer of the Springs Property from the Individual Defendants back to Springs Investors did not leave Plaintiffs without a potential remedy under the UFTA. Defendants contend that Plaintiff's claim is moot because the primary relief Plaintiffs sought was the voiding of the original transfer of the Springs Property. Plaintiffs, however, broadly allege that they are "entitled to . . . remedies under [G.S.] § 39-23.7" of the UFTA, including, but not limited to, "relief in the form of an injunction or receivership to protect the [Springs] Property from further disposition" by Defendants.[23] In addition, section 39-23.7 provides the Court authority to grant "[a]ny other relief the circumstances may require." Accordingly, there are still remedies available to Plaintiffs regarding the transfer of the Springs Property, and its transfer back to Springs Investors did not moot Plaintiffs' fraudulent transfer claim. *Roberts v. Madison Cnty. Realtors Assoc., Inc.*, 344 N.C. 394, 399 (1996) (finding that a claim is mooted only if an intervening event leaves the plaintiff with "no available remedy."). Accordingly, Defendants' Motion to Dismiss should be DENIED.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

---

[23] Proposed Am. Compl. ¶ 105.

33.     Plaintiffs' Motion to Amend Complaint is GRANTED in part, and DENIED in part, in that all of the amendments contained in Plaintiffs' proposed Amended Complaint are allowed except for the amendments to paragraphs 26 and 27.  Within five days of the date of this Order, Plaintiffs shall file with the Court an Amended Complaint conforming to the amendments permitted by this Order.

34.     Plaintiffs' Motion to Dismiss Count IV of Defendants' Amended Counterclaims is GRANTED.

35.     Defendants' Motion to Dismiss is DENIED.


This the 27th day of February, 2015.