Daniel Grp., Inc. v. Am. Sales & Mktg., Inc., 2016 NCBC 97.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 889

| | | |
|---|---|---|
| THE DANIEL GROUP, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| AMERICAN SALES & MARKETING, | ) | |
| INC. and DONALD P. LICATA, | ) | |
| Defendants. | ) | |

THIS MATTER comes before the Court upon Defendants American Sales and Marketing, Inc.'s, and Donald P. Licata's Motion to Dismiss Plaintiff's Amended Complaint ("Motion") pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). The Court heard oral arguments on the Motion. The Motion is now ripe for determination by the Court.

THE COURT, having considered the Motion, briefs in support of and opposition to the Motion, the oral arguments of counsel for the parties, and other appropriate matters of record, FINDS AND CONCLUDES that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons stated below.

> *Law Offices of Laurie J. Meilleur, PLLC by Laurie J. Meilleur, Esq. for Plaintiff The Daniel Group, Inc.*

> *Ellis & Winters LLP by Kelly Margolis Dagger, Esq. for Defendants American Sales and Marketing, Inc. and Donald P. Licata.*

McGuire, Judge.

I.     FACTUAL AND PROCEDURAL BACKGROUND.

1.     Plaintiff The Daniel Group, Inc. ("Plaintiff") is engaged in the business of manufacturer representation. As a manufacturer's representative, Plaintiff assists manufacturers in marketing and selling their products to retail stores within contractually-defined territories. (Am. Compl. ¶ 3.) Adam McCarthy ("McCarthy") has been the President, sole shareholder, and sole board member of Plaintiff at all times relevant to the Motion.

2.     Defendant American Sales & Marketing, Inc. ("American Sales") also is engaged in the business of manufacturer representation. Defendant Donald Licata[1] ("Licata") is the President, sole shareholder, and sole board member of American Sales (collectively, Licata and American Sales will be referred to as "Defendants").

3.     In 2004, Plaintiff purchased the assets of another manufacturer representation company, Performance Sales, Inc. ("Performance"). Among the assets Plaintiff purchased was the assignment of a 2002 "Manufacturer's Sales Representative Agreement" ("Sales Agreement") between Performance and M Corporation[2] under which Performance acted as a sales representative for M

---

[1] Prior to the formation of American Sales, Licata was the President, sole shareholder and sole board member of American Marketing and Sales, Inc. a Kansas corporation that was authorized to transact business in North Carolina by virtue of filing of a certificate of authority with the North Carolina Secretary of State. On January 7, 2015, the North Carolina Secretary of State revoked the Certificate of Authority for AMS for failure to file an annual report. For ease of reference in this Order, the Court will refer to Licata's businesses simply as "American Sales."

[2] The parties agree that any documents filed with the Wake County Clerk of Court/Business Court shall not include the true identity of "M Corporation" and such identity will either be redacted or substituted with the name: "M Corporation." Consent Protective Order (filed July 21, 2016).

Corporation's "Cellular Innovations products" to certain mass merchant retailers in the states of Alabama, Georgia, Mississippi, North Carolina, South Carolina and Tennessee. (*Id.* ¶¶ 16-18, Exh. B.) The Sales Agreement was terminable at-will by either party. After assignment of the Sales Agreement, Plaintiff began acting as M Corporation's sales representative in 2004.

4. In 2006, Plaintiff and Defendants entered in an oral agreement under which Defendants acted as sales representatives for certain of Plaintiff's clients ("Oral Agreement") (Am. Compl. ¶ 24.) Plaintiff alleges that the terms of the of the Oral Agreement were as follows:

a. "Defendants would serve as an independent contractor and agent in the capacity of a Sales Representative for Plaintiff as the principal.

b. Plaintiff was responsible for assigning its client manufacturers to Defendants.

c. Plaintiff would reimburse some out-of-pocket expenses incurred by Defendants, e.g. expenses related to certain trade show travel and trade show admissions costs.

d. Defendants' sole source of income and/or revenue from any work relating to or from Plaintiff's manufacturing clients, was to be a split of one half of all commissions paid to Plaintiff by its manufacturing clients, which clients were assigned to Defendants by Plaintiff.

e. Plaintiff would provide Defendants with administrative support.

f. Plaintiff would introduce Defendants to Plaintiff's clients as well as Plaintiff's retail account contacts and leads.

g. Defendants were free to represent other manufacturers that were not clients of Plaintiff and Plaintiff would not expect any commissions earned by Licata individually or as an agent of AMS and subsequently American Sales."

h. The agreement was terminable at will upon notice."

(*Id.*¶ 25.)

5.      Under the Oral Agreement, Plaintiff assigned Defendants to promote M Corporation's products within Plaintiff's territory as set out by the Sales Agreement. Among the retailers to whom Defendants promoted M Corporation's products were Family Dollar, Dollar General, and Variety Wholesalers. (*Id.* ¶¶ 17, 19, and 26.)

6.      Defendants were highly successful in selling M Corporation's products on behalf of Plaintiff. On August 12, 2015, Licata sent an email directly to an official of M Corporation requesting that M Corporation pay directly to Defendants a non-commission-based bonus. (Am. Compl. ¶ 29.) Plaintiff alleges that this request was in violation of the Sales Agreement and the Oral Agreement. (*Id.* ¶ 29.)

7.       Upon discovering that Licata had requested the bonus, on September 3, 2015, McCarthy sent to Licata a written Sales Representative Agreement (the "Proposed Representative Contract"). (*Id.* ¶30, Exh. E.) Through the Proposed Representative Contract, Plaintiff "attempted to put into writing most of the terms and conditions of [the parties'] verbal agreement as well as some additional terms including a non-compete agreement." (*Id.*) The Proposed Representative Contract also contained non-solicitation and confidentiality covenants. (*Id.*) Licata never signed the Proposed Representative Contract.

8.      On October 1, 2015, McCarthy sent Licata an email inquiring about the still-unsigned Proposed Representative Contract. (Am. Compl., Exh. F.) On October 2, 2015, Licata responded, "adam (sic) still under review by my lawyer.  will (sic) let you know .. thanks don (sic)." (*Id.*) McCarthy emailed Licata again on October 15,

2015, asking "[I]t has been 5 weeks since I sent out the rep contract, can you please give me an update on when your attorney will have this review?" Licata replied the next day that, due to the Jewish holidays in September and a trial that went longer than expected, his lawyer had not yet finished reviewing the Proposed Representative Contract. (*Id.*) Approximately two weeks later on October 30, 2015, Licata notified Plaintiff that Defendants were terminating the Oral Agreement effective immediately. (*Id.*, Exh. C.)

9.  Plaintiff alleges that, "between September 3, 2015, and October 30, 2015, while acting as an agent of Plaintiff, Defendants solicited Plaintiff's client, M Corporation, with respect to territories that had been contracted to Plaintiff for approximately eleven (11) years." (Am. Compl. ¶ 35.) On November 18, 2015, M Corporation and Plaintiff signed a revised Manufacturer's Sales Representative Agreement in which M Corporation removed Family Dollar, Dollar General, and Variety Wholesalers from Plaintiff's territory. Shortly thereafter M Corporation entered into an agreement with Defendants to represent M Corporation's products with the Family Dollar, Dollar General, and Variety Wholesalers accounts formerly serviced by Plaintiff. (Amended Compl. ¶ 23.)

10.  On January 25, 2016, Plaintiff filed its initial Complaint alleging nine claims for relief: (1) breach of the Oral Agreement; (2) breach of fiduciary duty; (3) breach of the implied covenant of good faith and fair dealing; (4) unfair and deceptive trade practices in violation of G.S. § 75-1.1; (5) fraud; (6) tortious interference with

the Sales Agreement; (7) misappropriation of trade secrets in violation of G.S. § 66-152 *et seq.*; (8) punitive damages; and (9) declaratory relief.

11. On March 2, 2016, this case was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and on March 3, 2016, assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

12. On April 11, 2016, Defendants moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court scheduled a hearing on the matter for Tuesday, May 24, 2016. On May 22, 2016, Plaintiff filed an Amended Complaint. While the Amended Complaint did not alter any of the nine claims for relief in the original Complaint, it rendered Defendants' motion to dismiss the original Complaint moot. *Houston v. Tillman*, 234 N.C. App. 691, 695, 760 S.E.2d 18, 20 (2014) (finding that plaintiff's amendment of the complaint rendered any argument concerning the original complaint moot).

13. On June 22, 2016, Defendants filed the Motion. Plaintiff subsequently responded to the Motion, and Defendants replied.

II. ANALYSIS.

14. Defendants seek to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When ruling on a Rule 12(b)(6) motion to dismiss, the Court must determine "whether the complaint, when liberally construed, states a claim upon which relief can be granted on any

theory." *Benton v. W. H. Weaver Constr. Co.*, 28 N.C. App. 91, 95, 220 S.E.2d 417, 420 (1975). Such a motion should be granted only: "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). The Court treats the well-pleaded allegations in a complaint as true and admitted in analyzing a Rule 12(b)(6) motion to dismiss. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). While facts and permissible inferences set forth in the complaint are analyzed in a light most favorable to the plaintiff, un-warranted conclusions of law or deductions of fact will not be deemed admitted. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986).

15. "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion. . . ." *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009) (citation omitted). The trial court may reject allegations in the complaint that are contradicted by the incorporated documents. *Id.* at 265, 672 S.E.2d at 553 (citation omitted).

a. *Breach of the Oral Agreement*

16. Plaintiff's First Cause of Action is for breach of the Oral Agreement (Am. Compl. ¶¶ 36-44.) Plaintiff alleges that "Defendants breached the [Oral Agreement] with Plaintiff, without cause, when Licata attempted to solicit additional monies from

Plaintiff's client, M Corporation, without Plaintiff's permission or actual knowledge on August 12, 2015." (*Id.* ¶ 41). Plaintiff alleges that this violated the parties' agreement that Defendants' "sole source of income and/or revenue from any work relating to or from Plaintiff's manufacturing clients, was to be a split of one half of all commissions paid to Plaintiff by its manufacturing clients." (Pl.'s Mem. Opp. Mot. Dismiss 3.)

17. The elements of a claim for breach of contract are: (1) existence of a valid contract; and (2) breach of the terms of that contract. *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005). "[W]here the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Woolard v. Davenport*, 166 N.C. App. 129, 134, 601 S.E.2d 319, 322 (2004) (*citing Toomer v. Garrett*, 155 N.C. App. 462, 481-82, 574 S.E.2d 76, 91 (2003).

18. Defendants contend that Plaintiff's claim fails because it has not alleged the "specific provisions" of the Oral Agreement that Defendants breached. More particularly, Defendants contend:

> "To the extent Plaintiff suggests that the parties' alleged agreement that Defendants' sole source of income and/or revenue from any work relating to or from Plaintiff's manufacturing clients, was to be a split of one half of all commissions paid to Plaintiff prohibited Mr. Licata from *accepting* a bonus from M Corporation, Plaintiff cannot plead a breach of that purported term where it only alleges that Mr. Licata asked for a bonus."

(Defs.' Mem. Supp. Mot. Dismiss 9.) Plaintiff contends that it has sufficiently pleaded the existence of a valid contract and a breach of the contract to meet a notice pleading standard and survive dismissal.

19. In support of its position that Plaintiff must allege the specific provision of the Oral Agreement that Defendants breached, Defendants rely on three cases, two of which involved decisions on motions for summary judgment and did not address the sufficiency of the allegations in the complaint. *Inland Am. Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 357, 712 S.E.2d 366, 371 (2011) and *Askew's Inc. v. Cherry*, 11 N.C. App. 369, 373, 181 S.E.2d 201, 203 (1971). In the third case relied on by Defendants, *Global Promotions Group, Inc. v. Danas*, 2012 NCBC LEXIS 40, \*17 (N.C. Super. Ct. 2012), this Court dismissed a breach of contract claim for failure to state a claim for relief, but only after concluding that "[p]laintiffs fail to reference any contract in particular, let alone a specific contractual provision, that was breached."

20. This Court is mindful that "[t]he general standard for civil pleadings in North Carolina is notice pleading. Pleadings should be construed liberally and are sufficient if they give notice of the events and transactions and allow the adverse party to understand the nature of the claim and to prepare for trial." *Radcliffe v. Avenel Homeowners Ass'n*, 789 S.E.2d 893, 913, 2016 N.C. App. LEXIS 824, \*52 (2016). Here, Plaintiff has alleged the specific contract breached and alleged facts suggesting Defendants breached the compensation provision of that contract. The Court concludes that Plaintiff sufficiently alleged that Defendants breached the Oral Agreement to place Defendants on notice of the nature of the claim and to survive dismissal at this early stage of the proceeding. Defendants' motion to dismiss Plaintiff's claim for breach of contract should be DENIED.

*b. Breach of Fiduciary Duty*

21.    Plaintiff alleges that Defendants breached a fiduciary duty to Plaintiff by (1) intentionally undermining Plaintiff's relationship with M Corporation, (2) by concealing its efforts to solicit M Corporation to enter into a direct relationship with Defendants and, (3) by causing M Corporation to terminate, in part, its contract with Plaintiff. (Am. Compl. ¶¶ 50-52.)

22.    "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (citing *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). "A fiduciary relationship may arise when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.* Such a relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed in one side, and *resulting domination and influence on the other.*" *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707-08 (emphasis added).

> Generally, in North Carolina . . . there are two types of fiduciary relationships: (1) those that arise from legal relations such as attorney and client, broker and client . . . partners, principal and agent, trustee and cestui que trust, [de jure relationships] and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other [de facto relationships].

*S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008). Only when "one party figuratively holds all the cards – all the financial power or technical information, for example — have North Carolina courts

found that the 'special circumstance' of a fiduciary relationship has arisen." *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.,* 219 N.C. App. 615, 621, 730 S.E.2d 763, 767 (2012).

23.     Plaintiff contends that it "has sufficiently pled (*sic*) that an agent/principal relationship existed between the parties" to support a fiduciary relationship. (Pl.'s Mem. Opp. Mot. Dismiss 4-5.) The Court disagrees. The "[t]wo essential elements of an agency relationship are: (1) the authority of the agent to act on behalf of the principal, and (2) the principal's control over the agent. *State v. Weaver*, 359 N.C. 246, 258, 607 S.E.2d 599, 606 (2005); *Leiber v. Arboretum Joint Venture, LLC*, 208 N.C. App. 336, 344, 702 S.E.2d 805, 811 (2010). A fiduciary duty arises from a relationship of principal and agent, however, only "where the agent has entire management so as to be, in effect, as much the guardian of his principal as the regularly appointed guardian of an infant." *Cross v. Beckwith*, 16 N.C. App. 361, 363, 192 S.E.2d 64, 66 (1972) (and cases cited therein); *In re Will of Sechrest*, 140 N.C. App. 464, 471, 537 S.E.2d 511, 516 (2000).

24.     While Plaintiff has alleged that Defendants were authorized to promote M Corporations products on behalf of Plaintiff to some retailers, it has not alleged that it had or maintained control over Defendants. To the contrary, the Amended Complaint alleges that Plaintiff and Defendants agreed that Defendants were independent contractors. (Amended Compl. ¶ 25(a).); *Miller v. Piedmont Steam Co.*, 137 N.C. App. 520, 526, 528 S.E.2d 923, 927 (2000) ("[T]he fact that the parties

formally agreed that Piedmont was an independent contractor and not an agent of Steemer is an indicia of the parties' intent that no agency relationship be formed.").

25.    In addition, the Proposed Representative Contract, which Plaintiff alleges memorialized the parties' already existing agreement, contradicts Plaintiff's assertion that its relationship with Defendants was that of a principal and agent. Plaintiff expressly alleges that the Proposed Representative Contract "attempted to put in writing most of the terms and conditions of [the parties'] verbal (*sic*) agreement." (Amended Compl. ¶ 30.) McCarthy's email to Licata regarding the Proposed Representative Contract states that it does not change the parties' existing agreement and that "[e]verything should be the same as it always has been." (*Id.*, Exh. F.) The Proposed Representative Contract explicitly provided that "Representative's (Licata) sole relationship with [Plaintiff] is that of an independent contractor . . . . Nothing contained in this Agreement is intended to or shall be construed to create between [Plaintiff] and Representative a relationship of employer/employee or principal/agent . . . ." (*Id.*, Exh. E ¶ 6.); *Schlieper*, 195 N.C. App. at 265, 672 S.E.2d at 553 (holding that a trial court may reject allegations that are contradicted by documents attached to the complaint).

26.    More significantly, Plaintiff has not alleged facts that would support a conclusion that Defendants had "entire management" of Plaintiff's business, or otherwise exercised domination and influence over Plaintiff.  Rather, Plaintiff alleges only that it "placed its trust and confidence in Defendants to successfully and effectively promote" M Corporation's products "within Family Dollar, Dollar General,

and Variety Wholesalers." (Am. Compl. ¶ 47.) Defendants' responsibility for three customers of one of Plaintiff's clients simply not sufficient to support a claim that Defendants occupied a position of power and influence over Plaintiff that created a fiduciary relationship between the parties. *See e.g. Dalton*, 353 N.C. at 651-52, 548 S.E.2d at 707-708 (at-will employee to whom employer entrusted management duties and in whom employer had confidence did not owe fiduciary duty because he lacked "domination and influence" over employer); *Tin Originals, Inc. v. Colonial Tin Works, Inc.,* 98 N.C. App. 663, 665-66, 391 S.E.2d 831, 832-33 (1990) (despite fact "that plaintiff placed special trust and confidence in defendants" due to being dependent on defendants for products that "constituted 80% of plaintiff's sales", defendants did not owe plaintiff a fiduciary duty.) The facts alleged in the Amended Complaint simply do not support the conclusion that Defendants owed a fiduciary duty to Plaintiff, and Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty should be GRANTED.

   c. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

27.    Plaintiff's Third Cause of Action alleges that Defendants breached an implied covenant of good faith and fair dealing and thereby "injured [Plaintiff's] rights to receive benefits under the [Sales Agreement] and [Oral Agreement] contracts." (Amended Compl. ¶ 59(f).) More specifically, Plaintiff alleges that Defendants breached an implied covenant by: (a) soliciting additional funds from M Corporation in August of 2015; (b) "willfully misleading" Plaintiff that the Proposed Representative Contract would be signed; and (c) soliciting and pressuring M

Corporation to terminate its agreement with Plaintiff regarding promoting M Corporation's products with Family Dollar, Dollar General, and Variety Wholesalers. (*Id.* ¶¶ 54-60.)

28.     It is well established in North Carolina that a contract carries with it an implied covenant by the parties to act fairly and in good faith in carrying out the agreement.

> In addition to its express terms, a contract contains all terms that are necessarily implied "to effect the intention of the parties" and which are not in conflict with the express terms. Among these implied terms is the basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement. All parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose.

*Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (citations and quotations omitted).

29.     Nevertheless, while a party who enters into an enforceable contract is required to make reasonable efforts to perform his obligations under the agreement, the Court cannot, and will not, imply contractual terms to which the parties did not agree. *McLean v. Keith*, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952) ("Equity can only compel the performance of a contract in the precise terms agreed on.").

30.     As an initial matter, Defendants were not parties to the Sales Agreement between Plaintiff and M Corporation. Since Defendants were not parties to the Sales Agreement, it is impossible for them to have breached its implied covenant of good faith and fair dealing. *Bicycle Transit Auth. v. Bell*, 314 N.C. 219,

228, 333 S.E.2d 299, 305 (1985) (providing that, through the covenant of good faith and fair dealing, each party *to the contract* implicitly agrees not to do anything which will deprive the other party thereto of its contractual benefits; emphasis added). Accordingly, to the extent Plaintiff attempts to claim Defendants breached an implied covenant of good faith in the Sales Agreement, that claim should be DISMISSED.

31.     Plaintiff's claim for breach of an implied covenant of good faith based on Defendants' allegedly "misleading" Plaintiff into believing that they were going to sign the Proposed Representative Contract fails for multiple reasons. First, the facts pleaded in the Amended Complaint do not support the conclusory allegation that Plaintiff was misled. Plaintiff does not allege that Licata told Plaintiff he intended to execute the Proposed Representative Contract. Rather, the email correspondence upon which Plaintiff relies in support of this claim establishes that Licata told McCarthy only that his attorney had not yet reviewed the Proposed Representative Contract. These facts as alleged do not support Plaintiff's claim that Licata intentionally misled Plaintiff. *Hamm v. Blue Cross & Blue Shield of N.C.*, 2010 NCBC LEXIS 17, *29 (N.C. Super. Ct. 2010) (A claim for breach of this covenant "requires the wrongful intent of a party to deprive another party of its contractual rights.").

32.     In addition, the terms of the Oral Agreement as alleged by Plaintiff did not include an agreement or commitment by Defendants to reduce the terms of the agreement to writing or to enter into a future written agreement. Accordingly, Plaintiff has failed to allege any facts supporting a claim that Defendants' failure to sign the Proposed Representative Agreement deprived Plaintiff of a benefit which

was intended or presupposed by the parties under the Oral Agreement. *Maglione*, 168 N.C. App. at 56, 607 S.E.2d at 291.

33. Plaintiffs' claim that Defendants breached the covenant of good faith and fair dealing by soliciting and pressuring M Corporation to contract directly with Defendants appears to be a thinly-veiled attempt to have this court read an implied non-competition or non-solicitation covenant into the Oral Agreement. In North Carolina, however, a covenant restricting competition, including one prohibiting the solicitation of customers, must be in writing. *United Labs. Inc. v. Kuykendall*, 322 N.C. 643, 649–50, 370 S.E.2d 375, 380 (1988). The Court will not permit Plaintiff to by-pass this requirement by implying a non-competition covenant into the Oral Agreement.

34. With regard to Plaintiff's claim that Defendants solicited an extra-contractual bonus directly from M Corporation, however, the allegations support a claim for breach of the covenant of good faith and fair dealing for the same reasons such conduct could support a claim for breach of contract. Plaintiff has alleged that the Oral Agreement limited Defendants' compensation to one half of the commission paid to Plaintiff by M Corporation. Considered in the light most favorable to Plaintiff, the allegations could support a claim that Defendants' request to M Corporation for the bonus deprived Plaintiff of a benefit to which it was entitled under the Oral Agreement.

35. In light of the foregoing, Defendants' motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be GRANTED

as to both Defendants' solicitation of M Corporation to terminate its agreement with Plaintiff concerning the promotion of M Corporation products with Family Dollar, Dollar General, and Variety Wholesalers, and Defendants' misleading of Plaintiff to believe that the Proposed Representative Contract would be signed. However, Defendants' motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing concerning their request for a bonus from M Corporation should be DENIED.

### d. Fraud

36. Plaintiff's Fifth Cause of Action is for fraud. (Am. Compl. ¶¶ 61-69.) Plaintiff alleges that "Licata's actions alleged [ ] in ¶¶ 48, 50, 56, and 60, …, were reasonably calculated to deceive Plaintiff." (Amended Compl. ¶ 73.) In its Memorandum in Opposition, Plaintiff contends that its claim for fraud is premised on the allegation "that from September 3 through October 31, 2015, Defendants concealed the fact that they were in direct competition with Plaintiff for Plaintiff's established client, M Corporation, while simultaneously working on Plaintiff's behalf for that same time period," apparently referring to the allegations in paragraphs 50(a) and (c), 56(b), and 64(b) and (c) of the Amended Complaint. (Pl.'s Mem. Opp. Mot. Dismiss 8.)

37. To successfully state a claim for fraud, one must allege: (1) that the defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive; (3) that the defendant intended to deceive; (4) that the plaintiff was, in fact, deceived; and (5) that

the plaintiff suffered damage as a result of the defendant's misrepresentation. *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997).

38.    "Where the claim arises by concealment or nondisclosure, Plaintiffs [ ] must allege that . . . Defendants had a duty to disclose material information to them, as silence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, *8 (N.C. Super. Ct. 2007) (*citing Griffin v. Wheeler-Leonard & Co.,* 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976)); *Island Beyond, LLC v. Prime Capital Group*, LLC, 2013 NCBC LEXIS 48, *18 (N.C. Super. Ct. 2013). A duty to disclose arises where: "(1) the fiduciary relationship exists between the parties to the transaction; (2) there is no fiduciary relationship and a party has taken affirmative steps to conceal material facts from the other; and (3) there is no fiduciary relationship and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009); *Harton v. Harton*, 81 N.C. App. 295, 298, 344 S.E.2d 117, 119 (1986).

39.    Defendants did not have a fiduciary duty to Plaintiff. *See ¶ 26 supra*. Nor has Plaintiff alleged that Defendants took steps to "actively conceal" their solicitation of M Corporation's accounts, but, rather, only that Defendants failed to disclose their conduct.  Accordingly, Defendant could only have had a duty to disclose if it had "knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable

diligence." *Hardin*, 199 N.C. App. at 696, 682 S.E.2d at 733; *Harton*, 81 N.C. App. at 298, 344 S.E.2d at 119.

40.     Plaintiff has failed to allege facts that would give rise to a duty to disclose on the part of Defendants in this case. First, it is highly questionable whether Plaintiff and Defendants were engaged in "negotiations" or any other transaction between September 3 and October 30, 2015, that would give rise to a duty to disclose. Plaintiff alleges only that McCarthy provided the Proposed Representative Contract to Licata on September 3, and that on October 2 and October 16 Licata advised McCarthy that his lawyer had not yet reviewed the agreement. Plaintiff has not alleged that McCarthy invited Licata to negotiate over the terms of the Proposed Representative Contract, let alone that the parties were negotiating those terms.

41.     More significantly, both Plaintiff and Defendants are businesses or businessmen, and North Carolina courts have been loath to impose an obligation of disclosure on commercial parties engaged in business negotiations. *See B&F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 87, 557 S.E.2d 176, 180-81 (2001) (defendant had no duty to disclose to plaintiffs where plaintiffs "were sophisticated businessmen, who were experienced with transactions involving commercial leases"); *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.,* 124 N.C. App. 383, 389, 477 S.E.2d 262, 265-66 (1996) (where two parties were sophisticated in negotiating commercial real estate transactions, lessor did not have a duty to disclose to lessee that it was negotiating a lease with another party for the same premises); *C.F.R. Foods, Inc. v. Randolph Dev. Co.*, 107 N.C. App. 584, 589, 421 S.E.2d 386, 389 (1992) (commercial

vendor owed no duty to disclose to a commercial vendee the presence of a landfill containing organic materials where vendee had full opportunity to make pertinent inquiries and failed to do so).

42.     At best, the Amended Complaint alleges that between September 3 and October 30, 2015, Plaintiff was seeking to have Defendant execute the Proposed Representative Contract. Even if this constituted a "negotiation", it was a commercial negotiation between two businesses and Defendants were not under an obligation to disclose their solicitation of M Corporation's business. Since there was no duty to disclose, Plaintiff's fraud claim must fail. Therefore, Defendants' motion to dismiss Plaintiff's fraud claim should be GRANTED.

e.  *Misappropriation of Trade Secrets*

43.     Plaintiff's Seventh Cause of Action is for violation of the North Carolina Trade Secret Protection Act ("TSPA"), G.S. § 66-152 *et seq.* (Am. Compl. ¶¶ 92-105.)

44.     A trade secret is "business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process" that (a) derives value "from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure" and (b) "[i]s subject of efforts that are reasonable under the circumstances to maintain its secrecy." G.S. § 66-152(3). Misappropriation is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent." G.S. § 66-152(1).

45.     To adequately plead a misappropriation of trade secrets claim, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets." *Id.* at 327, 660 S.E.2d at 585-86 (internal quotation omitted).

46.     Plaintiff's allegations in support of its misappropriation of trade secrets claim amount to little more than a conclusory recitation of terms used in the TSPA. Plaintiff alleges that its trade secrets consisted of "compilations of information, methods, techniques, contacts and processes that [Plaintiff] used in planning, marketing, and managing all aspects associated with identifying appropriate retail targets for their clients, access and set-up at various trade shows for exposure to targeted retail accounts, etc. (collectively, the 'Trade Secrets')." (Am. Compl. ¶ 96.) While this language mirrors portions of the statutory definition, it fails to identify the trade secrets with any particularity. The allegations to do not provide any specificity as to how Plaintiff's "methods, techniques, [ ] and processes" are unique or proprietary, or how they differ in any way from techniques or methods used by other manufacturer's representatives. Our Court of Appeals affirmed the dismissal of a similarly vague trade secret allegation in *Washburn*, where the defendant's

counterclaimed that plaintiffs "acquired knowledge of [defendant's] business methods; clients, their specific requirements and needs; and other confidential information pertaining to [defendant's] business." *Id.* at 326, 660 S.E.2d at 585-586. The *Washburn* court concluded that those allegations "d[id] not identify with sufficient specificity" the trade secrets that the plaintiff had allegedly misappropriated. *Id.*, 660 S.E.2d at 586.

47. In addition, "[a] plaintiff must also allege the acts by which the misappropriation was accomplished." *Le Bleu Corp. v. B. Kelley Enters.*, 2014 NCBC LEXIS 66, *11 (N.C. Super. Ct. 2014) (citing *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 585-86). Although Plaintiff alleges that Defendants had access to so-called "trade secrets", Plaintiff has not alleged how Defendants misappropriated its trade secrets. For example, Plaintiff does not allege that Defendants downloaded electronically stored information from Plaintiff's computer system or retained proprietary financial or business strategy information Plaintiff provided to Defendants.

48. Plaintiff specifically alleged only that "at various times, it provided its lists of retail contacts to Defendants for use in representing [Plaintiff's] clients." (Am. Compl. ¶ 98.) The retail contacts Defendants have allegedly used are those for Family Dollar, Dollar General, and Variety Wholesalers. To the extent Defendants had knowledge of the contact persons for those accounts gained through their work on behalf of Plaintiff, that information is not a trade secret. *See Kadis v. Britt*, 224 N.C. 154, 162, 20 S.E.2d 543, 548 (1944) ("By the majority view, the knowledge of a

deliveryman, or other personal solicitor, of the names and addresses of his employer's customers, gained during the performance of his duties, is not a trade secret, partly because the information would be readily discoverable, and partly because of the court's reluctance to deprive the employee of his subjective knowledge acquired in the course of employment."); *Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664, 677 (M.D.N.C. 2009) (holding that customer information maintained in the memory of a departing employee was not a trade secret).

49.     Finally, Plaintiff's allegations do not support the conclusion that it took reasonable steps to maintain the secrecy of the information it now claims constitute trade secrets. Plaintiff alleges it attempted to maintain secrecy by "requiring that newly contracted Sales Representatives sign contracts not to disclose Trade Secrets," but admitted that Defendants were an "exception" and were not required to sign such a contract. (Am. Compl. ¶ 100.) Plaintiff does not allege any other efforts it made to maintain the secrecy of its information. Defendants' motion to dismiss Plaintiff's misappropriation of trade secrets claim should be GRANTED.

### f.  *Tortious Interference with Contract*

50.     Plaintiff alleges that Defendants tortiously interfered with the Sales Agreement between Plaintiff and M Corporation when Defendants "willfully induced M Corporation to terminate its longstanding thirteen (13) year old contract with Plaintiff, in part with respect to certain territories, and instead contract with Defendants for territories previously held by Plaintiff." (Am. Compl. ¶¶ 78-91; Sixth Cause of Action.)  To establish a claim for tortious interference with contract, a

plaintiff must show: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *Kuykendall*, 322 N.C. at 661, 370 S.E.2d at 387 (citing *Childress v. Abeles,* 240 N.C. 667, 84 S.E.2d 176 (1954)).

51. To survive dismissal, a complaint alleging tortious interference "must admit of no motive for interference other than malice." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 832–33 (2007); *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001). "If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified." *Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 221, 367 S.E.2d 647, 650. If the defendant's interference is "for a legitimate business purpose, his actions are privileged . . . . [C]ompetition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Id.*; *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 371, 555 S.E.2d 634, 641 (2001) (a defendant's desire to "establish a competing business" is a justification for interference.).

52. Plaintiff contends that Defendants are "non-outsiders" to the Sales Agreement and, as such, were not justified in interfering with the contract because they "acted for their own benefit." (Pl.'s Mem. Opp. Mot. Dismiss 9-10.) "A non-outsider is one who, though not a party to the terminated contract, had a legitimate

business interest of his own in the subject matter." *Smith v. Ford Motor Co.*, 289 N.C. 71, 87, 221 S.E.2d 282, 292 (1976). A non-outsider enjoys qualified immunity from liability on a tortious interference claim. *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010). Nevertheless, a non-outsider may be liable for tortious interference if the non-outsider acted with "legal malice." *Varner v. Bryan*, 113 N.C. App. 697, 702, 440 S.E.2d 295, 298 (1994). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* In order to overcome the presumption of privilege, "the plaintiff must allege *facts demonstrating that defendants' actions were not prompted by legitimate business purposes.*" *Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 500, 411 S.E.2d 916, 926 (emphasis added).

53.     The Court, however, need not decide whether Defendants were "non-outsiders" to the Sales Agreement. Plaintiff has not pleaded "facts demonstrating that defendants' actions were not prompted by legitimate business purposes." *Id.* The Amended Complaint alleges that both Plaintiff and Defendants were manufacturer's representatives. Plaintiff acknowledged that Defendants were permitted to compete under the Oral Agreement, alleging that "Defendants were free to represent other manufacturers that were not clients of Plaintiff . . . ." (Am. Compl. ¶ 25(g).) Plaintiff also alleges that Defendants were competing with Plaintiff, albeit "secretly," while under the Oral Agreement. (*Id.* ¶¶ 50(a) and(c).) While Plaintiff alleges that Defendants acted "with malice and for a reason not reasonably related to the

protection of a legitimate business interest," (*Id.* ¶ 84), the Court is not compelled to accept such legal conclusions. *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, *42-43 (N.C. Super. Ct. 2016) (allegation that defendant "'maliciously intended' to interfere with [ ] contracts", absent supporting facts, insufficient to allege tortious interference); *Pinewood Homes, Inc.*, 184 N.C. App. at 605, 646 S.E.2d at 833 (2007) ("[g]eneral allegations of malice are insufficient as a matter of pleading"; citing *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965)). In light of the allegations that Defendants were competitors and were, in fact, competing with Plaintiff in soliciting M Corporation, Plaintiff has not alleged a claim for tortious interference. *Combs & Assocs. v. Kennedy*, 147 N.C. App. at 371, 555 S.E.2d at 641 (finding that one's desire to "establish a competing business" was a justification for interference).

54. Defendants' motion to dismiss Plaintiff's tortious interference with contract claim should be GRANTED.

g. *Unfair and Deceptive Trade Practices*

55. As its Fourth Cause of Action, Plaintiff attempts to repackage its allegations as a claim for unfair and deceptive trade practice in violation of G.S. § 75-1.1 (the "UDTPA") (Am. Compl. ¶¶ 61-69.) Plaintiff claims that Defendants committed an unfair and deceptive act because their breach of the Oral Agreement was accompanied by "substantial aggravating factors." (*Id.* ¶ 64.) Plaintiffs, however, have not alleged any aggravating factors connected to or surrounding the alleged breach of the Oral Agreement to support such a claim. In addition, to the extent

Plaintiff alleges that Defendants' conduct from September 3 to October 30, 2015 was unfair and deceptive, that claim too must fail.

56. To establish a claim for unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive practice or act, (2) the action was in or affecting commerce, and (3) Plaintiff was injured as a result. *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 82, 665 S.E.2d 478, 486 (2008). "For a practice to be deceptive, it must possess the tendency or capacity to mislead." *Forsyth Mem'l Hosp. v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 170 (1992). The determination as whether an act is unfair or deceptive is a question of law for the Court. *Dalton*, 353 N.C. at 656-57, 548 S.E.2d at 711.

57. In order to base a claim for unfair and deceptive practices on a breach of contract, "[t]he plaintiff must show substantial aggravating circumstances *attending the breach*." *Eastover Ridge, LLC v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (emphasis added). Plaintiff claims that Defendants breached the Oral Agreement on August 12, 2015, "when Licata attempted to solicit additional monies from … M Corporation." (Am. Compl. ¶ 40.) Plaintiff alleges that the substantial aggravating conduct is Defendants' delay in signing the Proposed Representative Contract and their solicitation of M Corporation's business between September 3 and October 30, 2015. (*Id.* ¶ 64.) The

alleged aggravating conduct did not attend, and is not related to, Defendants' solicitation of the bonus payment from M Corporation on August 12, 2015. Accordingly, Plaintiff has not alleged facts that would support a claim under G.S. § 75-1.1 based on breach of contract accompanied by substantial aggravating factors.

58.    In its Memorandum, Plaintiff argues that Defendants' conduct between September 3 and October 30, 2015, is itself an unfair and deceptive trade practice. (Pl.'s Mem. Opp. Mot. Dismiss 7-8.) The Court, however, already has determined that the allegations fail to establish that: (1) Defendants were bound by enforceable covenants prohibiting them from competing with Plaintiff or from soliciting M Corporation; (2) Defendants were bound to execute the Proposed Representative Contract; (3) Defendants misrepresented to Plaintiff that they would execute the Propose Representative Contract; or (4) Defendants had a duty to disclose their solicitation of M Corporation's business. For the same reasons, the Court concludes that the allegations in the Amended Complaint fail to state a claim for violation of G.S. § 75-1.1. Defendants' motion to dismiss Plaintiff's claim for unfair and deceptive trade practices should be GRANTED.

h.  *Punitive Damages.*

59.    Since the Court grants Defendants' motion to dismiss Plaintiff's claims for breach of fiduciary duty, fraud, and tortious interference with contract, and Plaintiff's remaining claim for breach of contract would not support an award of punitive damages, Defendants' motion to dismiss Plaintiff's claim for punitive damages should be GRANTED. *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 507, 320

S.E.2d 892, 898 (1984) ("punitive damages are generally not allowable for a breach of contract, unless there is an identifiable tort constituting or accompanying the breach, which tort contains some element of aggravation.").

### i. Declaratory Relief.

60.    Plaintiff's Ninth Cause of Action seeks a declaratory judgment that the Oral Agreement was a valid contract and that Defendants' breach of the Oral Agreement "excuse[d] Plaintiff's performance subsequent to October 30, 2015." (Am. Compl. ¶ 116.) Although it is not clear what "performance subsequent to October 30, 2015" Plaintiff seeks to be excused from, since the Court has not dismissed Plaintiff's claim for breach of contract it will not dismiss the claim for declaratory relief at this stage. Accordingly, Defendants' motion to dismiss Plaintiff's claim for declaratory relief should be DENIED.

THEREFORE, IT IS ORDERED that:

61.    Defendants' Motion as to Plaintiff's breach of contract claim is DENIED.

62.    Defendants' Motion as to Plaintiff's breach of fiduciary duty claim is GRANTED.

63.    Defendants' Motion as to Plaintiff's breach of the implied covenant of good faith and fair dealing claim is GRANTED in part and DENIED in part as provided *supra* in ¶ 35.

64.    Defendants' Motion as to Plaintiff's fraud claim is GRANTED.

65.    Defendants' Motion as to Plaintiff's misappropriation of trade secrets claim is GRANTED.

66. Defendants' Motion as to Plaintiff's tortious interference with contract claim is GRANTED.

67. Defendants' Motion as to Plaintiff's unfair and deceptive Trade Practices claim is GRANTED.

68. Defendants' Motion as to Plaintiff's claim for punitive damages is GRANTED.

69. Defendants' Motion as to Plaintiff's claim for declaratory relief is DENIED.

This the 15th day of December, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases