ASSOCIATION FOR HOME AND HOSPICE CARE OF NORTH CAROLINA, INC., PETITIONER v. DIVISION OF MEDICAL ASSISTANCE, NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, RESPONDENT

No. COA10-710

(Filed 16 August 2011)

**Appeal and Error—mootness—administrative decision—superior court review—dismissed**

In an appeal arising from an administrative action in which petitioner challenged a new methodology for calculating coverage under the Personal Care Services (PCS) Medicaid program, the superior court's injunction and order directing that the contested case be dismissed was vacated and remanded with instructions to dismiss the contested case for mootness. The PCS Medicaid program and related coverage policy had been termi-

nated, eliminating the effect that any determination in petitioner's contested case could have had on the controversy.

Appeal by Petitioner from order entered 11 March 2010 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 30 November 2010.

*Parker Poe Adams & Bernstein, by Renee J. Montgomery, Robb A. Leandro, and Matthew W. Wolfe, for Petitioner-Appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Belinda A. Smith and Assistant Attorneys General Iain Stauffer and Jennifer Hillman, for Respondent-Appellee.*

*John R. Rittelmeyer for Disability Rights North Carolina, Amicus Curiae.*

*Ott Cone & Redpath, P.A., by Thomas E. Cone and Wendell H. Ott, for Charlotte-Mecklenburg Hospital Authority, Duke University Medical Center, Mission Hospitals, Inc., Moses Cone Health System, North Carolina Baptist Hospital, and WakeMed Medical Center, Amici Curiae.*

BEASLEY, Judge.

Where the Personal Care Services (PCS) Medicaid program and related coverage policy have been terminated, we dismiss this appeal as moot.

Petitioner Association for Home and Hospice Care (AHHC) is an association of agencies that provide home care services to Medicaid-eligible residents. North Carolina's Medicaid program is supervised and administered by Respondent Division of Medical Assistance (DMA), an agency within the Department of Health and Human Services (DHHS). *See* N.C. Admin. Code tit. 10A, r. 22A .0101 (2009). This case arises from an administrative action in which AHHC challenged a new methodology for calculating coverage under the PCS Medicaid program, and the administrative law judge (ALJ) preliminarily enjoined DMA from implementing the same. AHHC appeals the superior court's order reviewing the injunction and directing that the contested case be dismissed.

Medicaid is an optional program making federal financial assistance available to states that elect to subsidize payments owed providers. 42 U.S.C. §§ 1396 *et seq.* Participating states must obtain

approval by the Centers for Medicare and Medicaid Services (CMS) of a "medical assistance" plan (State Plan) and any "material changes" thereto. 42 C.F.R. § 430.12 (2010). In-home personal care services constitute an optional category of medical assistance that states may choose to include in its plan, *see* 42 U.S.C. 1396a(a)(10)(A) (2009), and, in general, are physician-authorized services furnished in-home by a qualified provider to an individual who is not a hospital inpatient or a resident of a nursing home, institution, or like facility, *See* 42 U.S.C. § 1396d(a)(24). North Carolina has elected to provide these services, *see* N.C. Admin. Code tit. 10A, r. 22 O.0120, and, until recently, did so under programs referred to as PCS and PCS-Plus, which were governed by DMA Policy 3C.[1]

A budgetary measure passed in August 2009 (Budget Bill) obliged DMA to effectuate compliance with reductions in Medicaid spending and explicitly addressed PCS. *See* 2009 N.C. Sess. Laws ch. 451 § 10.68A.(a). The law required DMA to implement certain new criteria for assessing PCS eligibility and the level of assistance needed by those who qualified, *id.* § 10.68A.(a)(3). DMA thus adopted a "scoring algorithm" to refine the methodology for determining the number of approved PCS hours and contracted with a third-party entity to conduct independent assessments of all PCS plans of care. These changes to the PCS program prompted AHHC to file a contested case petition, alleging DMA violated the Budget Bill's procedural mandates to, *inter alia*, provide notice of, publish, and allow a 30-day comment period for amended medical coverage policies. *See id.* § 10.68.A(c).

Pending a full adjudication on the merits, the ALJ enjoined DMA from using the scoring algorithm to assign PCS hours and from conditioning payment of PCS hours on prior authorization Prior to any ALJ decision, however, DMA petitioned the Wake County Superior Court "to suspend and review" the preliminary injunction. The trial court granted DMA's writ of certiorari and concluded that the ALJ lacked jurisdiction to enter the injunction order "by reason of sovereign immunity." The trial court dissolved the preliminary injunction and further enjoined the ALJ "from taking any further action in this matter other than dismissing the contested case." AHHC appeals and argues that the superior court: (i) lacked jurisdiction over DMA's petition for certiorari because the order was not a final agency decision

---

1. Where DHHS is statutorily required to "develop, amend, and adopt medical coverage policy," *see* N.C. Gen. Stat. § 108A-54.2 (2009), DMA has promulgated program-specific clinical coverage policies which outline the clinical content of our state's Medicaid services, and DMA Clinical Coverage Policy No. 3C governs the PCS program.

subject to judicial review; (ii) erroneously applied sovereign immunity to dismiss the contested case; and (iii) erred in granting DMA's petition because it had no merit. We do not reach the issues raised by AHHC because this appeal is moot.

"A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison County Realtors Assn.*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996); *see also Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 20, 652 S.E.2d 284, 298 (2007) ("A matter is rendered moot when (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." (internal quotation marks omitted)). If "during the course of litigation it develops that . . . the questions originally in controversy between the parties are no longer at issue, the case should be dismissed," as the matter is no longer justiciable. *Simeon v. Hardin*, 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994). Several exceptions, however, permit our courts to address an otherwise moot claim where there exists, *inter alia*: (1) "a defendant's voluntary cessation of a challenged practice"; (2) a case that is "capable of repetition, yet evading review"; or (3) "a matter of public interest." *Thomas v. N.C. Dept. of Human Resources*, 124 N.C. App. 698, 705, 478 S.E.2d 816, 820-21 (1996) (internal quotation marks and citations omitted).

On 30 June 2010, the General Assembly passed Session Law 2010-31, which repealed the statutory provisions of the Budget Bill which, as the ALJ noted, were "the genesis of the issues in this contested case." *See* 2010 N.C. Sess. Laws ch. 31, § 10.35 (striking the entirety of § 10.68A.(a)(3) of Session Law 2009-451, which had authorized DMA's implementation of new PCS criteria). Session Law 10-31 further amended the Budget Bill by adding § 10.68A.(a)(3a) thereto, which provided that "[i]n order to enhance in-home aid services to Medicaid recipients, [DMA] shall . . . no longer provide services under PCS and PCS-Plus, the later of January 1, 2011, or whenever CMS approves the elimination of the PCS and PCS-Plus programs and the implementation of" two new similar services, In-Home Care for Children (IHCC) and In-Home Care for Adults (IHCA). *Id.*

On 24 September 2010, DMA filed a motion to dismiss AHHC's appeal for mootness (Motion), contending that the issues raised were no longer in controversy due to: (1) the repeal of the Budget Bill's provision that authorized the PCS review and methodology change;

and (2) a newly promulgated PCS Policy 3C abolishing the use of the scoring algorithm challenged by AHHC. Relying in part on the proposition that "[r]epeal of a challenged law generally renders moot the issue of the law's interpretation or constitutionality," *Property Rights Advocacy Grp. v. Town of Long Beach*, 173 N.C. App. 180, 183, 617 S.E.2d 715, 718 (2005), the agency argued that the legislature's enactment of Session Law 10-31 and DMA's rescission of the previous version of Policy 3C mooted the instant appeal. This Court denied DMA's Motion for various reasons.

First, repeal of the subject budgetary provision might have mooted some, but not all, of AHHC's claims. It is true that DMA contended the review of PCS hours by the third-party independent assessment entity was required by the Budget Bill and that AHHC indeed challenged the agency's interpretation of the bill as unsupported by the plain language. Accordingly, the repeal of the statute would usually "render[] moot the issue of the law's interpretation." *Id.* AHHC's remaining claims, however, did not entail construction of the Budget Bill or any other law involved but, rather, DMA's failure to comply therewith. Moreover, DMA argued before this Court that even without the enabling legislation in the Budget Bill, the agency had authority to conduct the PCS assessments pursuant to its general utilization review power, thus suggesting that the repeal of § 10.68.A(a)(3) of the Budget Bill would not preclude DMA from reviewing PCS hours and eligibility in the manner challenged. Finally, while Session Law 10-31 legislated away PCS in favor of implementing the two new in home-care services, it expressly conditioned the program changes on CMS approval. When this Court denied DMA's Motion, CMS had not approved any state plan amendment; thus, the Budget Bill's PCS sunset provision had not been triggered.

Where DMA had suggested that it could re-implement the methodology it had ceased using even without the Budget Bill's authorization and uncertainty prevailed as to if and when CMS would approve the elimination of PCS, exceptions to the mootness doctrine certainly permit our consideration of the appeal even if AHHC's claims were technically no longer viable. However, interim events, namely CMS approval to discontinue PCS, have eliminated the effect that any determination in AHHC's contested case can have on the controversy. Where the mootness issue "is not determined solely by examining facts in existence at the commencement of the action[,] [i]f the issues before a court or administrative body become moot *at any time during the course of the proceedings*, the usual response should be to dis-

miss the action." *Carolina Marina and Yacht Club, LLC v. New Hanover County Bd. of Com'rs*, ___ N.C. App. ___, ___, 699 S.E.2d 646, 648 (2010) (internal quotation marks and citations omitted).

On 15 April 2011 CMS approved the respective North Carolina Medicaid State Plan Amendment (SPA 10-031), noting that the DMA proposal "was submitted as a result of a change to the State Law that discontinued [PCS] and [PCS-Plus]"; "established two new In-Home Personal Care Services" along with "new eligibility criteria for receipt of [IHCA and IHCC]"; and indicated our state's "intent to move the coverage of PCS to Section 1915(i) of the Social Security Act" as Home and Community Based Service State Plan Option.[2] The amended pages of the State Plan reflect that In-Home Care Services for Adults and Children are now provided as community based services and describe the parameters of the IHCA and IHCC programs. DMA's May 2011 North Carolina Medicaid Bulletin notified personal care service providers about the implementation of in-home care (IHC) services and explained that "[e]ffective June 1, 2011, [DMA] will no longer provide services under PCS and PCS-Plus and will implement [the] two new services." Thus, the PCS and PCS-Plus programs ended on 31 May 2011 and superseded by the IHC services on 1 June. The PCS termination date is further noted on Policy 3C, which is now obsolete, and new Clinical Coverage Policies 3E (IHCA) and 3F (IHCC) have an original effective date of 1 June 2011.

In light of the fact that the PCS program has been discontinued entirely, not by DMA but at the direction of our General Assembly, the relief sought by AHHC-reversal of the changes DMA made to the PCS assessment process-if granted, would not have any practical effect on either party. Moreover, the facts in existence at the current stage do

_____

2. In order to address the question of mootness, we take judicial notice of CMS's decision approving the amendment to North Carolina's State Plan, the State Plan amendments, and related publications by DMA. *See Utilities Comm. v. Southern Bell Telephone Co.*, 289 N.C. 286, 288, 221 S.E.2d 322, 323-24 (1976) ("This Court has recognized in the past that important public documents will be judicially noticed. *Staton v. R.R.*, 144 N.C. 135, 145, 56 S.E. 794, 797 (1907) (railroad reports to the Corporation Commission judicially noticed); 1 Stansbury's North Carolina Evidence, § 13 (Brandis Rev. 1973). Consideration of matters outside the record is especially appropriate where it would disclose that the question presented has become moot, or academic, and therefore neither of the litigants has any real interest in supplementing the record."); *see also McGRX, Inc. v. Vermont*, 2011 WL 31022, at *1 n.1 (D. Vt. Jan. 5, 2011) (taking judicial notice of CMS approval of State Medicaid Plan Amendment, noting that "[m]any cases have recognized that a Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority" and that a "court may take judicial notice of governmental agency determinations" (internal quotation marks and citations omitted)).

not present any exceptions to the general mootness rule. Accordingly, the controversy is no longer appropriate for judicial action, and we dismiss the appeal as moot. *See Matthews v. Dept. of Transportation*, 35 N.C. App. 768, 770, 242 S.E.2d 653, 654-55 (1978) ("We find that the substantial amendments to Chapter 126 contained therein, together with the fact that there no longer exists a controversy among the parties in this case, would render our determination of the issues sought to be presented by the defendants little more than an advisory opinion as to the effect of prior law on hypothetical parties.").

The usual disposition when a case is mooted while on appeal is "simply to dismiss the appeal." *Southern Bell*, 289 N.C. at 290, 221 S.E.2d at 324. Our Supreme Court has explained, however, that in appeals from this Court, this procedure "leaves the decision of the Court of Appeals undisturbed as a precedent when, but for intervening mootness, it might not have remained so[,]" and advised that "the better practice in this circumstance is to vacate the decision of the Court of Appeals." *Id.* at 290, 221 S.E.2d at 325. The same problem presents itself in this appeal from the superior court, which itself sat as an appellate court in the administrative action. Thus, "[w]hile we express no opinion as to its correctness," *id.*, we believe that it is likewise the better practice in this circumstance to vacate the decision of the superior court and remand with instructions to dismiss the contested case for mootness.

APPEAL DISMISSED; SUPERIOR COURT ORDER VACATED and REMANDED.

Judges BRYANT and STROUD concur.