NO. COA13-1094

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

GERALDINE GRIER HOUSTON,
        Plaintiff,

        v.                          Mecklenburg County
                                    No. 12 CVS 11029
JUANITA TILLMAN and THE ESTATE
OF CLIFFORD MEDLIN, JR.,
        Defendants.


Appeal by defendants from judgment entered 14 May 2013 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *Paul Whitfield, P.A., by Paul L. Whitfield, for plaintiff-appellee.*

> *John F. Hanzel, P.A., by John F. Hanzel, for defendants-appellants.*


GEER, Judge.

The trial court entered judgment in favor of plaintiff Geraldine Grier Houston and against defendants Juanita Tillman and the Estate of Clifford Medlin, Jr. for the sum of $120,000.00. On appeal, defendants primarily argue that the trial court erred when it imposed a constructive trust on certain property in the absence of defendants' engaging in any wrongdoing. Because "wrongdoing" is not a requirement for

imposing a constructive trust and because the record contains sufficient evidence to support the trial court's imposition of a constructive trust, we find no error.

## Facts

In about 1989, plaintiff, who was married, met the decedent, Clifford Medlin. Mr. Medlin lived on Miller Avenue in Charlotte, North Carolina (the "Miller Avenue residence"). In 1997, plaintiff's husband moved out of their home on Coburg Avenue in Charlotte (the "Coburg residence"), leaving plaintiff, plaintiff's daughter, and plaintiff's two grandchildren to support themselves. Plaintiff began working, but was forced to stop sometime in 2000 due to a back injury she suffered on the job. Although disabled, plaintiff was able to maintain the mortgage on the Coburg residence for some time with rent paid by her daughter who continued to live with her.

After her husband had left, plaintiff's relationship with Mr. Medlin became romantic. Plaintiff and Mr. Medlin sometimes stayed the night at the other's house, and starting in 2001, when Mr. Medlin began a seven-year regimen of dialysis treatments, plaintiff started providing caretaking and in-home nursing services for Mr. Medlin.

In 2004, plaintiff fell behind on her mortgage payments for the Coburg residence, and the bank foreclosed on her home.

However, Mr. Medlin acquired title to the Coburg residence in his own name and plaintiff and her family then resumed living at the Coburg residence. Mr. Medlin paid the mortgage on the Coburg residence while plaintiff paid for groceries. In addition, in 2005, Mr. Medlin purchased a new Dodge Stratus and gave it to plaintiff for Mother's Day. While title to the Dodge remained in Mr. Medlin's name, plaintiff was responsible for the car's maintenance.

Mr. Medlin underwent a kidney transplant in 2008. Plaintiff stayed at the hospital for a month with Mr. Medlin while he was recovering. After Mr. Medlin was discharged, plaintiff continued to provide caretaking and in-home nursing services for him. Over the course of their relationship, plaintiff also helped Mr. Medlin when he suffered from gout, a back condition, and problems associated with asbestos in his lungs. Plaintiff also managed Mr. Medlin's finances. Plaintiff estimated that she spent six to seven hours per day for 11 years taking care of Mr. Medlin and providing in-home nursing services.

Mr. Medlin died unexpectedly of a heart attack in early 2012. The day Mr. Medlin died, Mr. Medlin's sister -- defendant Tillman -- whom plaintiff had never met, arrived at the Miller Avenue residence and declared, "I am in charge here." Ms.

Tillman demanded keys to the Miller Avenue residence and the Coburg residence. Being one of Mr. Medlin's heirs, Ms. Tillman applied for and was appointed as the personal representative of Mr. Medlin's estate shortly after his death. Ms. Tillman repossessed the Dodge from plaintiff with the assistance of a uniformed police officer and evicted plaintiff from the Coburg residence, letting the house go into foreclosure. Ms. Tillman also sold the Dodge and placed the proceeds into the estate.

On 8 June 2012, plaintiff filed suit against Ms. Tillman and Mr. Medlin's estate, asserting causes of action for (1) a claim for personal services, (2) constructive trust, parole trust, and (3) parole gift. The complaint sought the sum of $582,400.00 for personal services rendered to Mr. Medlin and the declaration of a constructive or resulting trust with respect to the Coburg residence.

On 16 August 2012, defendants filed a combined motion to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, motion for summary judgment, and motion for sanctions and attorneys' fees. Plaintiff responded with a motion to amend and restate her complaint.[1] On 2 October 2012, the trial court entered an order deferring ruling on the Rule 12(b)(6) motion,

---

[1]Although the record does not explicitly disclose whether or when such a motion was made, we infer from the trial court's 2 October 2012 order that such a motion was made prior to that date.

allowing plaintiff leave to file an amended and restated complaint, and declining to rule on defendants' remaining motions. After plaintiff filed an amended and restated complaint on 2 October 2012, defendants, on 30 October 2012, again filed a combined Rule 12(b)(6) motion to dismiss, motion for summary judgment, and motion for sanctions and attorneys' fees. On 10 December 2012, the trial court entered an order denying defendants' motions.

At trial, the trial court instructed the jury solely on plaintiff's request for a constructive trust, submitting three issues to the jury. The jury answered "[y]es" as to the issue whether the Coburg Avenue residence and the Dodge were "subject to a constructive trust in favor of the Plaintiff[.]" The jury also found that "the conduct of the Defendants, Juanita Tillman and The Estate Of Clifford Medlin, Jr., deprived the Plaintiff of a beneficial interest in [the Coburg residence] and the 2005 Dodge Stratus to which the Plaintiff is entitled[.]" Finally, with respect to "[w]hat amount is the Plaintiff . . . entitled to recover from the Defendants . . .[,]" the jury answered: $120,000.00. The trial court denied defendants' motion for judgment notwithstanding the verdict and entered judgment on 14 May 2013 in accordance with the verdict. Defendants timely appealed to this Court.

I

Defendants first contend that the trial court erred when it granted plaintiff leave to amend her complaint, when it denied defendants' motions to dismiss pursuant to Rule 12(b)(6), and when it denied defendants' motion for summary judgment. However, with respect to the trial court's decision to grant plaintiff's motion for leave to amend her complaint, defendants merely asserted their contention in a heading and presented no specific argument why that ruling was in error. We, therefore, will not address that ruling. *See* N.C.R. App. P. 28(b)(6).

With respect to defendants' argument that the trial court erred in denying their motion to dismiss the original complaint, plaintiff's amendment and restatement of the complaint has rendered any argument regarding the original complaint moot. *See Ass'n for Home & Hospice Care of N.C., Inc. v. Div. of Med. Assistance*, 214 N.C. App. 522, 525, 715 S.E.2d 285, 287-88 (2011) ("'A case is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.'" (quoting *Roberts v. Madison Cnty. Realtors Ass'n*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996))); *Hyder v. Dergance*, 76 N.C. App. 317, 319-20, 332 S.E.2d 713, 714 (1985) (noting that "an amended complaint has the effect of superseding the original complaint"). *See also*

*Coastal Chem. Corp. v. Guardian Indus., Inc.*, 63 N.C. App. 176, 178, 303 S.E.2d 642, 644 (1983) (noting trial court found defendant's motion to dismiss plaintiff's original complaint presented "'moot question'" when trial court granted plaintiff's motion to amend).

With respect to defendants' motion to dismiss the amended complaint, defendants cannot show any prejudice from the denial of their motion as to the first claim for relief based on quantum meruit since the trial court did not submit the quantum meruit claim to the jury. With respect to the constructive trust claim, defendants argue that the trial court erred in failing to dismiss the claim because the amended complaint failed "to allege wrongdoing on the part of Defendants in the acquisition of the property in question which would allow the imposition of a constructive trust." As we explain below, in discussing defendants' arguments regarding its motion for a directed verdict and motion for JNOV, defendants have mistaken the law. Because plaintiff was not required to allege wrongdoing and defendants have made no other argument regarding the sufficiency of the amended complaint, defendants have failed to demonstrate that the trial court erred in denying their motion to dismiss.

Defendants also contend that the trial court erred in denying their motion for summary judgment as to all of plaintiff's claims in the amended complaint. However, "[i]mproper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts . . . ." *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Because this case was tried on the merits after denial of defendants' motion for summary judgment, under *Harris*, defendants' arguments regarding the summary judgment order cannot amount to reversible error, and we, therefore, do not address them.

## II

Defendants next contend that the trial court erred in denying their motion for a directed verdict and motion for JNOV as to plaintiff's quantum meruit and constructive trust claims. However, although defendants argue in their brief that plaintiff's evidence in support of her claim based on quantum meruit was insufficient, plaintiff's quantum meruit claim was not submitted to the jury. The sole issue before the jury was plaintiff's entitlement to a constructive trust. As a result, defendants' arguments regarding the quantum meruit claim cannot be a basis for reversal of the judgment below. This aspect of

defendants' argument is beside the point. *See Dodd v. Wilson*, 46 N.C. App. 601, 602, 265 S.E.2d 449, 450 (1980) (holding verdict on issues submitted to jury rendered moot court's refusal to submit another issue to jury where refusal did not result in harm to defendant-appellant).

The sole remaining question is whether the trial court erred in denying defendants' motion for a directed verdict and motion for JNOV as to plaintiff's request for a constructive trust. "'The standard of review of the denial of a motion for a directed verdict and of the denial of a motion for JNOV are identical. We must determine whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the non-movant, the evidence is sufficient to be submitted to the jury.'" *Springs v. City of Charlotte*, 209 N.C. App. 271, 274-75, 704 S.E.2d 319, 322-23 (2011) (quoting *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 410, 677 S.E.2d 485, 491 (2009)).

Defendants' only contention with respect to the constructive trust claim is that "for a constructive trust to be imposed, the owner of title has to acquire the property through some sort of wrongdoing" and that, here, "[s]uch wrongdoing was

neither alleged nor proven." Defendants argue that since they acquired title to the Coburg residence and the Dodge by operation of intestacy law, they could not have committed wrongdoing because they took no affirmative action to acquire title.

Our Supreme Court's decision in *Variety Wholesalers, Inc. v. Salem Logistics Servs., LLC*, 365 N.C. 520, 723 S.E.2d 744 (2012), sets out the controlling law with respect to constructive trusts. In rejecting this Court's conclusion that the existence of a fiduciary relationship was a requirement for imposition of a constructive trust, the Supreme Court explained:

> "A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty *or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust*."

*Id.* at 530, 723 S.E.2d at 751 (emphasis added) (quoting *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970)). The Court noted further that it had "also used the phrase, 'any other unconscientious manner,' in describing situations in which a constructive trust may be imposed without a fiduciary relationship." *Id.* at 531, 723 S.E.2d at 752

(quoting *Speight v. Branch Banking & Trust Co.*, 209 N.C. 563, 566, 183 S.E. 734, 736 (1936)).

Accordingly, *Variety Wholesalers* holds that a trial court may impose a constructive trust, even in the absence of fraud or a breach of fiduciary duty, upon the showing of either (1) some other circumstance making it inequitable for the defendant to retain the funds against the claim of the beneficiary of the constructive trust, or (2) that the defendant acquired the funds in an unconscientious manner.  *Id.* at 530-31, 723 S.E.2d at 751-52.  *See also id.*, 723 S.E.2d at 752 (noting that "[i]n the absence of [a fiduciary] relationship, [plaintiff] faces the difficult task of proving 'some other circumstance making it inequitable' for [defendant] to possess the funds . . ." (quoting *Wilson*, 276 N.C. at 211, 171 S.E.2d at 882)).

Although defendants cite *Variety Wholesalers* and *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999), in support of their claim that "some other circumstance" and "unconscientious manner" are synonymous with "wrongdoing," defendants have not pointed to any language in either case to support their contention.[2]  Indeed, the Supreme Court's

---

[2]*Sara Lee* addressed the interaction of the constructive trust doctrine with the Workers' Compensation Act, and it is, therefore, irrelevant to our discussion here except insofar as it recites the same general test for imposition of a

application of the constructive trust doctrine in *Variety Wholesalers* establishes that actual wrongdoing, such as fraud or breach of fiduciary duty, is not necessary for imposition of a constructive trust.

In *Variety Wholesalers*, the plaintiff had contracted with a provider of bill-payment and auditing services. 365 N.C. at 522, 723 S.E.2d at 746. When notified by the bill-payment provider of the amounts the plaintiff owed to freight carriers, the plaintiff, at the provider's request, would forward the amounts due to a lock-box bank account that, unbeknownst to the plaintiff, was actually owned by the defendant, the provider's lender. *Id.*, 723 S.E.2d at 746-47. The plaintiff claimed that the amounts deposited by the plaintiff were supposed to be paid to the freight carriers. *Id.*, 723 S.E.2d at 747. However, the defendant applied the funds deposited in the lock-box account -- which, according to the defendant, were supposed to be funds payable to the provider -- towards the principal and interest due on the provider's line of credit. *Id.*

In holding that issues of fact existed regarding the availability of a constructive trust, the Supreme Court did not require proof of actual wrongdoing, but instead held that if the defendant had "*constructive notice* that [the provider] did not

_____

constructive trust articulated in *Variety Wholesalers*. 351 N.C. at 35, 519 S.E.2d at 313.

have ownership of the funds deposited in the [lock-box] account, [the defendant's] continued acceptance of those funds could be considered unconscientious or inequitable and could thus permit the imposition of a constructive trust." *Id.* at 531, 723 S.E.2d at 752 (emphasis added). *See also Weatherford v. Keenan*, 128 N.C. App. 178, 179, 493 S.E.2d 812, 813 (1997) (upholding constructive trust in equitable distribution action even absent any mention of fraud, breach of fiduciary duty, or wrongdoing).

In this case, defendants have argued only that "the standard for imposing a constructive trust is that [the] holder of legal title acquired the property through some wrongdoing. Such wrongdoing was neither alleged nor proven" in this case. Since under *Variety Wholesalers*, proof of wrongdoing is not a necessary prerequisite for a constructive trust and since defendants have made no argument that plaintiff's evidence was insufficient to prove, as allowed in *Variety Wholesalers*, some other circumstance making it inequitable for defendants to have retained the Coburg residence and the Dodge, defendants have failed to demonstrate that the trial court erred in denying their motion for a directed verdict and their motion for JNOV. *See also Rape v. Lyerly*, 287 N.C. 601, 615, 215 S.E.2d 737, 746 (1975) (holding constructive trust may be imposed on property received by beneficiaries of decedent's estate to enforce

unfulfilled personal services agreement for decedent to devise land to plaintiff); *Rhue v. Rhue*, 189 N.C. App. 299, 307-08, 658 S.E.2d 52, 59 (2008) (upholding constructive trust on certain land parcels when parties had confidential and cohabiting relationship; plaintiff assisted defendant with day-to-day living, managed defendant's finances, cared for defendant's grandson, helped operate defendant's business, and relied on defendant's promise that parcels would be for their mutual benefit; and defendant subsequently denied plaintiff's interest in parcels).

Defendants have not challenged the trial court's jury instructions or the issues submitted to the jury and have made no other argument for reversal of the judgment below. We, therefore, hold that defendants received a trial free of prejudicial error.

No error.

Judges ROBERT C. HUNTER and McCULLOUGH concur.