Lau v. Constable, 2017 NCBC 10.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

GREGORY LAU and VENT TECH
CORPORATION,

          Plaintiffs,

          v.

DOUGLAS CONSTABLE; ROBERT
MARTIN; TIFFANY WILLARD; and
JENNIFER CONSTABLE,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 4393

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION ON MOTIONS
TO DISMISS**

1. **THIS MATTER** is before the Court on Defendant Jennifer Constable's Motion to Dismiss ("Mrs. Constable's Motion") and Defendant Tiffany Willard's Motion to Dismiss ("Ms. Willard's Motion") (collectively, the "Motions") filed on September 27, 2016. For the reasons set forth below, the Court **DENIES** Mrs. Constable's Motion and **DENIES IN PART** and **GRANTS IN PART** Ms. Willard's Motion.

> *Tuggle Duggins P.A., by Brandy L. Mills, Benjamin P. Hintze, and Jeffrey S. Southerland, for Plaintiffs Gregory Lau and Vent Tech Corporation.*
>
> *Blanco Tackabery & Matamoros, P.A., by Elliot A. Fus, M. Rachael Dimont, and Peter J. Juran, for Defendants Douglas Constable, Robert Martin, Tiffany Willard, and Jennifer Constable.*

Robinson, Judge.

## I.    PROCEDURAL HISTORY

2. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

3.     Plaintiffs initiated this action by filing their Complaint on July 21, 2016. This case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated July 22, 2016 and assigned to the undersigned on the same day.

4.     On September 27, 2016, Defendant Jennifer Constable ("Mrs. Constable") and Defendant Tiffany Willard ("Ms. Willard") (collectively, the "Movants") filed the Motions pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") and a brief in support. The Motions have been fully briefed, and the Court held a hearing on the Motions on January 31, 2017. The Motions are now ripe for resolution.

## II.     FACTUAL BACKGROUND

5.     The Court does not make findings of fact on the Motions under Rule 12(b)(6), but only recites those factual allegations of the Complaint that are relevant and necessary to the Court's determination of the Motions.

6.     Plaintiff Gregory Lau ("Mr. Lau") is the founder and majority shareholder of Plaintiff Vent Tech Corporation (the "Company") (collectively, the "Plaintiffs"). (Compl. ¶¶ 7, 15.) Mr. Lau was the Company's chief executive officer until the Company's assets were sold on December 31, 2012 (the "Sale"). (Compl. ¶¶ 20, 24.)

7.     Defendant Douglas Constable ("Mr. Constable") was the Company's vice president and chief financial officer and a shareholder of the Company until the Sale. (Compl. ¶¶ 21, 24.) Mr. Constable is married to Mrs. Constable. (Compl. ¶ 12.) Ms. Willard was Mr. Constable's administrative assistant. (Compl. ¶ 11.)

8. Defendant Robert Martin ("Mr. Martin") was a shareholder of the Company until 2009 and the president of the Company until the Sale. (Compl. ¶¶ 22, 24.)

9. As the Company's vice president and chief financial officer, Mr. Constable was responsible for the Company's management, sales, accounting, record keeping, and financial affairs. (Compl. ¶ 24.) Mr. Constable maintained the Company's general ledger, QuickBooks, banking and credit information, profit and loss statements, and various financial reports. (Compl. ¶ 24.)

10. Mr. Lau effectively had no role in the Company's United States operations. (Compl. ¶ 27.) Instead, Mr. Lau spent most of his time in China managing the Company's overseas manufacturing. (Compl. ¶ 27.) Mr. Lau was not knowledgeable or experienced in the financial aspects of the Company or the Company's United States operations. (Compl. ¶ 28.) As a result, Mr. Lau entrusted Mr. Constable and Mr. Martin to manage the Company's United States operations. (Compl. ¶ 27.)

11. In addition to ceding control of the Company's finances, Mr. Lau entrusted Mr. Constable with managing Mr. Lau's personal interests in the United States. (Compl. ¶ 31.) Accordingly, Mr. Lau provided Mr. Constable with access to Mr. Lau's personal bank account. (Compl. ¶ 31.)

12. After the Sale, Mr. Lau was the Company's sole shareholder. (Compl. ¶ 33.) Mr. Constable continued working for the buyer and maintained access to Mr. Lau's funds and the Company credit card. (Compl. ¶ 33.)

13. In or around late 2013, representatives of the buyer informed Mr. Lau that there were financial irregularities in the Company's books for which the buyer

believed Mr. Constable was responsible. (Compl. ¶ 35.) Mr. Lau conducted an investigation into the Company's books and records and discovered financial irregularities and misuse of Company funds. (Compl. ¶ 36.)

14. According to Plaintiffs, beginning in 2008 and continuing into 2013, Mr. Constable defrauded and stole millions of dollars from the Company and Mr. Lau. (Compl. ¶ 37.) Plaintiffs contend that Mrs. Constable was aware of and complicit in Mr. Constable's theft of funds from the Company and Mr. Lau. (Compl. ¶¶ 12, 62, 64.)

15. Plaintiffs contend that as part of Mr. Constable's theft from the Company and Mr. Lau, Mr. Constable recorded false transactions in the Company's general ledger as payments to a company named Amerasia, but that such payments were in fact directed to Mr. Constable. (Compl. ¶¶ 38–39.)

16. Plaintiffs also allege that from 2009 until the Sale in 2012, Mr. Constable diverted the Company's money into Ventlab Holdings, LLC ("Ventlab Holdings"), a limited liability company owned by Mr. Lau, Mr. Constable, and Mr. Martin. (Compl. ¶¶ 18, 45.) Plaintiffs contend that Mr. Constable then took the Company's money from Ventlab Holdings for himself. (Compl. ¶ 45.)

17. Plaintiffs further allege that from 2009 until in or around 2012, Mr. Constable diverted the Company's funds from the Company's bank accounts for his own benefit. (Compl. ¶ 54.) The Complaint sets forth seventy-three specific instances between November 25, 2009 and December 16, 2012 where Mr. Constable allegedly diverted the Company's funds to himself or for his benefit. (Compl. ¶ 55.)

18. Plaintiffs contend that from 2010 until in or around 2011, Mr. Constable diverted Mr. Lau's funds from Mr. Lau's personal bank account for Mr. Constable's benefit. (Compl. ¶ 59.)

19. Mr. Constable allegedly used the Company credit card for personal expenses for himself and his family. (Compl. ¶ 49.) The Complaint sets forth fifty-two specific transactions between June 19, 2010 and December 12, 2013 where Mr. Constable used the Company credit card and avers each of the transactions were Mr. Constable's personal, as opposed to business, expenses. (Compl. ¶¶ 50, 88.) Mr. Constable allegedly used the Company credit card to make payments to the University of South Carolina—where Mr. and Mrs. Constable's son attended school—Neiman Marcus, Windsor Jewelers, Chanel, Fendi, Prada, Hermes, as well as for hotels in and airfare to Italy, the Bahamas, Las Vegas, and Nashville. (Compl. ¶¶ 50, 61.) The allegations about two of the fifty-two transactions specifically mention Mrs. Constable. (Compl. ¶ 50.) The Complaint alleges that:

- "On or about April 5, 2011, [Mr.] Constable caused payments to be made for airfare to Nassau, Bahamas for [Mr.] Constable, *Mrs. Constable*, and others in the amount of $1,317.60 per ticket" (Compl. ¶ 50d (emphasis added)); and

- "From on or about March 13, 2012 to on or about March 21, 2012, [Mr.] Constable caused payments to be made for a trip to Nashville, Tennessee by [Mr.] Constable and *Mrs. Constable*, including for

plane tickets, hotel, car rental, and shopping" (Compl. ¶ 50q (emphasis added)).

The Complaint also alleges that Mrs. Constable wrongfully used the Company credit card. (Compl. ¶¶ 65, 94.)

20. Plaintiffs allege that Mr. Constable's misappropriation of the Company's and Mr. Lau's funds was for the personal benefit of Mr. Constable, Mrs. Constable, and their family. (Compl. ¶¶ 49, 61, 87, 90.) According to Plaintiffs, the misappropriated funds were used to pay for landscaping of Mr. and Mrs. Constable's home, college tuition for their son, family vacations, and personal luxury items such as jewelry, sports memorabilia, and firearms. (Compl. ¶¶ 61, 90.) Plaintiffs contend that Mrs. Constable was aware that Mr. Constable was wrongfully diverting funds from Mr. Lau and the Company for the benefit of Mr. and Mrs. Constable, and that Mrs. Constable received funds and the benefit of funds wrongfully taken. (Compl. ¶¶ 12, 62–63, 91–92.) Plaintiffs aver that Mrs. Constable was "complicit" in Mr. Constable's wrongful diversion of funds. (Compl. ¶¶ 64, 93.)

21. Further, Plaintiffs contend that Ms. Willard used the Company credit card throughout 2013 for personal expenses. (Compl. ¶¶ 101–02.)

22. Plaintiffs contend that the misappropriation of the Company's and Mr. Lau's funds was carried out pursuant to an agreement among Defendants to defraud the Company and Mr. Lau. (Compl. ¶¶ 281–83.)

23. The Company and Mr. Lau each assert claims against Mr. Constable for constructive fraud, breach of fiduciary duty, fraud, unfair and deceptive trade

practices, and conversion. (Compl. 51–52, 54–56, 64, 66, 68–70.) The Company asserts claims against Mr. Martin for constructive fraud, breach of fiduciary duty, and conversion. (Compl. 58–60.) Of specific relevance to the Motions, the Company asserts claims against Mrs. Constable and Ms. Willard for conversion (ninth and tenth claims), and Plaintiffs assert claims against all defendants for unjust enrichment (sixteenth claim), constructive trust (seventeenth claim), and civil conspiracy (eighteenth claim). (Compl. 62–63, 72–74.)

### III. LEGAL STANDARD

24. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Complaint in the light most favorable to plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Complaint liberally and accepts all factual allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

25. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not

be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

26. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## IV. ANALYSIS

### A. Conversion

27. Movants contend that the conversion claims against them are barred by the statute of limitations. (Defs. Jennifer Constable and Tiffany Willard's Br. in Support Mots. to Dismiss 4.)

28. Whether a claim is time-barred by the statute of limitations is a mixed question of law and fact. *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 81, 712 S.E.2d 221, 226 (2011). "A statute of limitations can provide the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint establishes that plaintiff's claim is so barred." *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 65, 614 S.E.2d 328, 334 (2005). Dismissal pursuant to Rule 12(b)(6) on the grounds that a claim is barred by the statute of limitations is proper only when all the facts necessary to establish that the claim is time-barred are either alleged or admitted in the

complaint, construing the complaint liberally in favor of plaintiff. *Fox v. Sara Lee Corp.*, 210 N.C. App. 706, 708–09, 709 S.E.2d 496, 498 (2011).

29. Conversion is (1) an unauthorized assumption and exercise of the right of ownership over goods or personal property belonging to another, and (2) a wrongful possession or conversion by defendant, regardless of the subsequent application of the converted property. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E2d 744, 747 (2012).

30. The statute of limitations applicable to a claim for conversion is three years. N.C. Gen. Stat. § 1-52(4); *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 310, 603 S.E.2d 147, 165 (2004). The discovery rule does not apply to a conversion claim; rather, the statute of limitations begins to run at the time defendant asserts dominion over the property. *Marzec v. Nye*, 203 N.C. App. 88, 96, 690 S.E.2d 537, 543 (2010); *White*, 166 N.C. App. at 310, 603 S.E.2d at 165.

31. Here, the Complaint was filed on July 21, 2016. Thus, the Company's causes of action for conversion against Movants must have accrued on or after July 21, 2013.

32. With respect to the conversion claim against Ms. Willard, the Complaint alleges that Ms. Willard used the Company credit card "throughout 2013" for personal expenses. Although the Complaint does not allege a specific date in 2013 on which Ms. Willard used the Company credit card, the Court cannot conclude that, taking the allegations of the Complaint as true, the face of the Complaint establishes that the Company's conversion claim against Ms. Willard is barred by the statute of

limitations. If the Company alleges, as it implicitly has, that Ms. Willard used the Company credit card for improper purposes at some time after July 21, 2013, then the claim survives a Rule 12(b)(6) motion to dismiss.

33. With respect to the conversion claim against Mrs. Constable, the Complaint contains two allegations that Mrs. Constable used the Company credit card. The first allegation appears within the allegations of Mr. Constable's misappropriation of funds that are alleged to have occurred before the Sale. The second allegation appears under the heading "Defendants' Continued Theft and Misappropriation of Funds After Sale of Assets" and within the allegations of Mr. Constable's misappropriation of funds that occurred after the Sale. (Compl. 44.) Further, the Complaint alleges that Mr. Constable's misappropriation of Company funds occurred after July 21, 2013, and that Mrs. Constable received Company funds and the benefit of Company funds wrongfully taken by Mr. Constable in the form of personal luxury items, clothing, family vacations, and home improvements. (Compl. ¶¶ 88r–bb, 90–93.)

34. The Court concludes that the face of the Complaint does not establish that the Company's conversion claim against Mrs. Constable is barred by the statute of limitations. First, construing the allegations of the Complaint liberally in favor of Plaintiffs, the Complaint alleges that Mrs. Constable used the Company credit card after the Sale in 2013, and the Complaint does not admit or allege that such use occurred before July 21, 2013. Moreover, the Complaint alleges that Mr. Constable misappropriated Company funds after July 21, 2013 and that Mrs. Constable

received those misappropriated Company funds and goods bought with such funds. *See State v. West*, 293 N.C. 18, 31, 235 S.E.2d 150, 158 (1977) (noting that a person who comes into possession of converted property is a converter liable to the true owner, regardless of the person's innocence or good faith).

35. Therefore, the Court concludes that the face of the Complaint does not establish that the Company's conversion claims against the Movants are barred by the statute of limitations, and the Motions as to these claims are denied.

B. Unjust Enrichment

36. Movants contend that Plaintiffs' sixteenth claim for unjust enrichment as to Movants is also barred by the statute of limitations. (Defs.' Br. in Support Mots. to Dismiss 4.) Mrs. Constable further contends that the Complaint fails to state an unjust enrichment claim against her pursuant to the "direct benefit rule." (Reply Br. of Defs. Jennifer Constable and Tiffany Willard in Support Mots. to Dismiss 3.)

37. The Court concludes that the face of the Complaint does not establish that Plaintiffs' unjust enrichment claim as to Movants is barred by the statute of limitations. The statute of limitations applicable to a claim for unjust enrichment is three years. N.C. Gen. Stat. § 1-52(1); *Martin Marietta Materials, Inc. v. Bondhu, LLC*, 772 S.E.2d 143, 146 (N.C. Ct. App. 2015). The discovery rule does not apply to an unjust enrichment claim. *TaiDoc Tech. Corp. v. OK Biotech Co.*, 2016 NCBC LEXIS 26, at *45 (N.C. Super. Ct. Mar. 28, 2016); *Patriot Performance Materials, Inc. v. Powell*, 2013 NCBC LEXIS 9, at *5 (N.C. Super. Ct. Feb. 13, 2013). To state a claim for unjust enrichment, plaintiff must allege facts that show: (1) plaintiff conferred a

benefit on defendant; (2) the benefit was not conferred officiously; (3) the benefit was not gratuitous; (4) the benefit is measurable; and (5) defendant consciously accepted the benefit. *Butler v. Butler*, 239 N.C. App. 1, 7, 768 S.E.2d 332, 336 (2015).

38. Here, Plaintiffs' unjust enrichment claim is premised on their conversion theories. Therefore, the Court concludes that the face of the Complaint does not establish that Plaintiffs' unjust enrichment claim against Movants is barred by the statute of limitations for the same reasons the Court so concludes with respect to the conversion claims.

39. Mrs. Constable contends that Plaintiffs have failed to state an unjust enrichment claim against her pursuant to the "direct benefit rule" set forth in *Effler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149 (1989). In *Effler*, the Court of Appeals of North Carolina affirmed summary judgment on plaintiff's unjust enrichment claim in favor of defendant because plaintiff did not confer a direct benefit on defendant. Although *Effler* has not been expressly overruled, cases decided after *Effler* have held that an indirect benefit can support an unjust enrichment claim. *See New Prime, Inc. v. Harris Transp. Co.*, No. COA12-271, 2012 N.C. App. LEXIS 921, at *11 (N.C. Ct. App. Aug. 7, 2012) (unpublished) ("Our holding in the instant case is in line with the Restatement and other states. Many jurisdictions do not require that the plaintiff confer a direct benefit on the defendant in order to recover under a theory of unjust enrichment."); *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. App'x 916, 921 (4th Cir. 2003) (discussing *Effler* and subsequent case law and concluding that "[u]nder North Carolina law, it is sufficient for a plaintiff to prove

that it has conferred some benefit on the defendant, without regard to the directness of the transaction").

40.     Further, the facts of *Effler* are distinguishable from the facts of this case. In *Effler*, plaintiff and the husband-defendant's wife signed a note, which enabled the husband-defendant and the wife to purchase property.  The husband-defendant and his wife acquired the property as tenants by the entireties.  The husband-defendant's wife died and the husband-defendant remarried.  The husband-defendant conveyed the property to himself and his new wife, the wife-defendant, as tenants by the entireties.

41.     The court in *Effler* affirmed summary judgment in favor of the wife-defendant on plaintiff's unjust enrichment claim.  *Effler*, 94 N.C. App. at 353, 380 S.E.2d at 152.  Although the husband-defendant acquired his interest in the property with plaintiff's help, the court stated that plaintiff did not show that she conferred a benefit on the wife-defendant; rather, the wife-defendant received title to the property from her husband. *Id.*

42.     Here, Plaintiffs contend that Mrs. Constable received Company funds misappropriated by Mr. Constable, and the benefit of Company funds misappropriated by Mr. Constable in the form of personal luxury items, clothing, family vacations, and home improvements. (Compl. ¶¶ 12, 49−50, 61−63, 87, 90−92.) The Complaint alleges that Mrs. Constable was aware that Mr. Constable was wrongfully diverting Company funds.  (Compl. ¶¶ 12, 62, 64.)   Moreover, the Complaint alleges that Mrs. Constable herself wrongfully used the Company credit

card for her own personal benefit. (Compl. ¶¶ 65, 94.) These allegations sufficiently state that Plaintiffs conferred a benefit on Mrs. Constable, which was not officious or gratuitous, and that Mrs. Constable consciously accepted the benefit.

43. Therefore, the allegations of the Complaint are sufficient to state a claim for unjust enrichment against Movants, and the Motions as to this claim are denied.

## C. Constructive Trust

44. Movants contend that Plaintiffs' seventeenth claim for constructive trust as to Movants is barred by the statute of limitations. (Reply Br. of Defs. in Support Mots. to Dismiss 8.) Movants further contend that the Complaint fails to state a proper claim for constructive trust as to Movants because there is no allegation of a relationship of trust or confidence between Movants and Plaintiffs, and there is nothing on which a constructive trust can be imposed. (Defs.' Br. in Support Mots. to Dismiss 15–16.)

45. The Supreme Court of North Carolina has stated that

> [a] constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Variety Wholesalers, Inc.*, 365 N.C. at 530, 723 S.E2d at 751 (quoting *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970)).

46. The statute of limitations applicable to a constructive trust claim is ten years. *Stratton*, 211 N.C. App. at 91, 712 S.E.2d at 232. When the basis for imposing a constructive trust is fraud or mistake, however, the statute of limitations is three

years. *Id.* at 92, 712 S.E.2d at 232. Movants contend that, although Plaintiffs do not bring express claims for fraud against Movants, the basis for Plaintiffs' constructive trust claim sounds in fraud and, as a result, the three-year statute of limitations applies.

47. The Court reads the Complaint as basing Plaintiffs' constructive trust claim on their conversion and unjust enrichment claims. The Court has concluded that the face of the Complaint does not establish that the conversion and unjust enrichment claims are barred by the statute of limitations. It necessarily follows that the face of the Complaint does not establish that Plaintiffs' constructive trust claim as to Movants is barred by the statute of limitations, irrespective of whether such statute is three or ten years.

48. As to Movants' contention that the constructive trust claim fails because there is no allegation of a relationship of trust or confidence, it is well-settled that "a fiduciary relationship, while generally the basis for constructive trust claims, is not strictly required." *Variety Wholesalers, Inc.*, 365 N.C. at 530, 723 S.E2d at 752. A trial court may impose a constructive trust on "the showing of either (1) some other circumstance making it inequitable for the defendant to retain the funds against the claim of the beneficiary of the constructive trust, or (2) that the defendant acquired the funds in an unconscientious manner." *Houston v. Tillman*, 234 N.C. App. 691, 697, 760 S.E.2d 18, 21 (2014).

49. Here, the Complaint alleges that Movants wrongfully used the Company credit card for personal expenses, and that Mrs. Constable received Company funds

misappropriated by Mr. Constable and goods bought with such funds. The Court finds that such allegations are sufficient, at the motion to dismiss stage, to show that Movants acquired Company funds and goods bought with such funds in an unconscientious manner or under circumstances making it inequitable for Movants to retain the funds and goods.

50. Finally, as to this claim, the Court cannot conclude that there is no property or funds on which a constructive trust can be imposed. The Complaint alleges Movants used the Company credit card to purchase tangible items, such as sporting goods and jewelry. (Compl. ¶¶ 61, 90.) Such tangible items are property on which the Court can impose a constructive trust. *See Houston*, 234 N.C. App. at 698, 760 S.E.2d at 22 (affirming imposition of a constructive trust on a vehicle); *Hinson v. Hinson*, 80 N.C. App. 561, 569, 343 S.E.2d 266, 271 (1986) (stating a constructive trust is a broad remedy imposed in an unlimited variety of situations); *Singer Mfg. Co. v. Summers*, 143 N.C. 102, 106, 55 S.E. 522, 523 (1906) (stating that a court may impose a constructive trust on specific property). Moreover, the Court may impose a constructive trust on funds. *Variety Wholesalers, Inc.*, 365 N.C. at 532, 723 S.E2d at 752 ("[T]rust pursuit does not fail where *substantial* identification of the trust property or of the proceeds or product from a conversion thereof, is made." (quoting *Edgecombe Bank & Tr. Co. v. Barrett*, 238 N.C. 579, 586, 78 S.E.2d 730, 736 (1953))).

51. Therefore, the Court concludes that the allegations of the Complaint are sufficient to state a claim for a constructive trust against Movants, and the Motions as to this claim are denied.

D.      Civil Conspiracy

52.     Movants contend that Plaintiffs' eighteenth claim for civil conspiracy as to Movants is barred by the statute of limitations, and that the allegations are not sufficient to state a claim for civil conspiracy.  (Defs.' Br. in Support Mots. to Dismiss 13–14.)

53.      The Court concludes that the face of the Complaint does not establish that Plaintiffs' civil conspiracy claim as to Movants is barred by the statute of limitations. The applicable statute of limitations to a civil conspiracy claim is three years.  *Carlisle v. Keith*, 169 N.C. App. 674, 685, 614 S.E.2d 542, 549 (2005).  There is not a separate cause of action for civil conspiracy—if the underlying claim fails, the conspiracy claim must also fail.  *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 73 (2008).

54.     Here, Plaintiffs' civil conspiracy claim against Movants is based on the conversion claims.  The Court has concluded that the face of the Complaint does not establish that the conversion claims are barred by the statute of limitations.  Thus, it follows that the face of the Complaint does not establish that Plaintiffs' civil conspiracy claim against Movants is barred by the identical three-year statute of limitations.

55.     As to the sufficiency of Plaintiffs' allegations, under North Carolina law,

> [t]he elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.

*Id.* at 19, 669 S.E.2d at 72.  The purpose of a conspiracy claim is to associate defendants together to impose joint and several liability on the conspirators for injury

resulting from the acts of any one conspirator done in furtherance of the conspiracy. *Neugent v. Beroth Oil Co.*, 149 N.C. App. 38, 53, 560 S.E.2d 829, 838 (2002); *see also Burton v. Dixon*, 259 N.C. 473, 477, 131 S.E.2d 27, 30–31 (1963) (holding that a civil conspiracy action may be maintained against a husband and wife). Further,

> [a] threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy *must be the showing that a conspiracy in fact existed*. The existence of a conspiracy requires proof of an agreement between two or more persons. Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission to a jury.

*S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 609, 659 S.E.2d 442, 449 (2008) (quoting *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005)).

56.  Here, the Complaint first mentions a conspiracy on page 74 of the 75-page Complaint. The Complaint alleges that "Defendants conspired and agreed amongst themselves and acted in concert to defraud and otherwise harm [Mr.] Lau and the Company as alleged [in the Complaint]." (Compl. ¶ 281.) The Complaint further states that

> Defendants conspired to conceal and deliberately withhold information from [Mr.] Lau regarding acts as alleged herein, including *inter alia*, misappropriation and misdirection of [Mr.] Lau's and the Company's funds, assets, and other things of value, concealment of said misappropriation and misdirection through fraudulent record keeping, and unauthorized personal use of credit cards belonging to or paid for by the Company.

(Compl. ¶ 283.)

57.     The Court concludes that the allegations of the Complaint are sufficient to state a civil conspiracy claim against Mrs. Constable. In addition to the conclusory allegations that Defendants conspired and agreed, the Complaint contains several allegations that Mrs. Constable was aware of and complicit in Mr. Constable's misappropriation of Plaintiffs' funds for the benefit of their family, and that Mrs. Constable herself wrongfully used the Company credit card for personal expenses. While Plaintiffs will ultimately bear the burden of proving that a conspiracy in fact existed, the Court finds these allegations sufficiently plead facts at the motion to dismiss stage, as opposed to conclusions, to support the elements of a conspiracy between Mrs. and Mr. Constable.

58.     Conversely, the Court concludes that the allegations of the Complaint are insufficient to state a civil conspiracy claim against Ms. Willard. Other than the conclusory allegations that Defendants conspired and agreed, there are no factual allegations to support the existence of an agreement between Ms. Willard and any other defendant. Unlike the allegations concerning Mrs. Constable, there are no allegations that Ms. Willard was aware of, complicit in, or otherwise involved in Mr. Constable's alleged misappropriation or any other defendant's wrongful conduct pursuant to the conspiracy. In fact, there are only two allegations in the entire Complaint with respect to Ms. Willard—that she was Mr. Constable's administrative assistant, and she wrongfully used the Company credit card throughout 2013. The only allegations that tie Ms. Willard to the alleged conspiracy are those conclusory allegations that Defendants conspired and agreed, which appear at the very end of

the Complaint. The Court finds such conclusory allegations, without more, are insufficient to state a civil conspiracy claim against Ms. Willard. *See S.N.R. Mgmt. Corp.*, 189 N.C. App. at 609, 659 S.E.2d at 449 (affirming trial court's Rule 12(b)(6) dismissal of plaintiff's civil conspiracy claim when "plaintiff failed to establish evidence of the conspiracy that was sufficient to create more than a suspicion or conjecture" (internal quotations omitted)); *Bottom v. Bailey*, 238 N.C. App. 202, 213, 767 S.E.2d 883, 890 (2014) (affirming trial court's Rule 12(b)(6) dismissal of plaintiff's civil conspiracy claim and stating "[t]he complaint asserts mere conclusions concerning the elements of civil conspiracy, without offering a scintilla of factual allegation in support of the claim").

59. Therefore, the Court concludes that the allegations of the Complaint are sufficient to state a civil conspiracy claim against Mrs. Constable, and Mrs. Constable's Motion as to this claim is denied. On the other hand, the Court concludes that the allegations of the Complaint are insufficient to state a civil conspiracy claim against Ms. Willard, and Ms. Willard's Motion as to this claim is granted.

## V. CONCLUSION

60. **THEREFORE**, pursuant to the foregoing, the Court **DENIES** Mrs. Constable's Motion, and **DENIES in part** and **GRANTS in part** Ms. Willard's Motion. Plaintiffs' civil conspiracy claim against Ms. Willard is hereby **DISMISSED with prejudice**.

**SO ORDERED**, this the 7th day of February, 2017.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases